## VOORHEES and TALCOTT *vs.* SEYMOUR, President of the Bank of Auburn.

A judgment creditor, by commencing supplementary proceedings against the judgment debtor under section 292 of the code, and obtaining an order for the examination of the debtor, does not acquire a prior right to, or lien upon, the equitable assets of the debtor. PRATT, J. dissented.

If, after the granting of such an order, another creditor commences a suit against the judgment debtor, to enforce an equitable lien upon the equitable assets of the debtor, by way of pledge, which suit results in a judgment establishing the lien claimed, and directing a sale of the assets for the payment of the claim, the latter suit is conclusive against the right of the creditor instituting the supplementary proceedings, and establishes, incontrovertibly, the claim of the plaintiff in the last suit, to the equitable assets

Voorhees *v.* Seymour.

of the judgment debtor; and the judgment cannot be impeached collateral-ly in an action brought by the creditor instituting the supplementary proceedings, and the receiver appointed therein.

APPEAL, by the plaintiffs, from a judgment entered upon the report of a referee. The action was brought by the plaintiff Voorhees as assignee of several judgments against George F. Leitch, and by Richard Talcott, receiver of the property and effects of the said Leitch, appointed in proceedings supplementary to execution, commenced by the said Voorhees. The object of the action was to reach certain bank stock formerly owned by the said Leitch, or the proceeds thereof, upon which it was claimed the plaintiff Voorhees had obtained a lien by virtue of the said supplementary proceedings, and the order made therein for the examination of the judgment debtor, which stock had been claimed and received by the defendant, the bank of Auburn, without right, and appropriated to its own use. The plaintiffs, in their complaint, claimed that the defendant should be brought to account concerning the said stock, and the proceeds and dividends thereof; and demanded judgment, that the same be applied in payment of the plaintiff's judgments, &c. and for other and further relief. The referee held and decided that the judgments in favor of The Auburn Theological Seminary, and The Bank of Auburn, under which the defendant claimed the stock, and the proceeds thereof, were conclusive in this action upon the rights and claims of the parties, and established, as against the plaintiff, the claim and lien of the defendants upon the stock and its proceeds, to the amount of the debt adjudicated—which exceeded in amount the value of the stock owned by the debtor Leitch; and that the defendant was entitled to judgment, dismissing the complaint of the plaintiff, with costs. The facts are more fully stated in the opinion of the court.

*J. L. Newcomb*, for the appellants. I. *Proceedings, supplementary to execution*, having been commenced upon some

Voorhees *v.* Seymour.

of the judgments on which this action is founded—before either the *seminary* or *bank* suits were commenced—such judgments became a *lien* upon the bank stock in question, and the owners of the judgments acquired such a *prior* right to the stock, by their diligence, that such lien and prior right could not be cut off and. destroyed, and the object of such proceedings defeated by subsequent suits, to which they were not made parties, and of which they had no notice. (1.) Where proceedings, supplementary to execution are instituted under the code, the order for the debtor's examination, under the 292d section, gives the judgment creditor the same lien upon the debtor's equitable assets which he acquired under the former practice, by the commencement of a suit by a creditor's bill. (*Porter* v. *Williams*, 5 *How. Pr. Rep.* 441, *Harris, J. Sale* v. *Lawson*, 4 *Sandf. S. C. R.* 718 ; *see opinion.* · *Orr's case*, 2 *Abbott's Pr. R.* 458. *Griffin* v. *Dominguez*, 2 *Duer*, 658. *Myres' case*, 2 *Abbott*, 476 ; *see opinion. Lilliendahl* v. *Felleman*, 11 *How.* 529.) (2.) Under the former practice, the judgment creditor who first filed a creditor's bill obtained thereby a priority over all other creditors, in relation to the debtor's equitable assets. (1 *Barb. Ch. Pr.* 158. *Corning* v. *White*, 2 *Paige*, 567. *Albany City Bank* v. *Schermerhorn*, 1 *Clarke*, 297.) (3.) It would be á gross violation of all just and equitable principles, to establish the doctrine, that while a judgment creditor is proceeding diligently, by supplementary proceedings, to save his debt, another creditor, who has no judgment, and who obtains knowledge of the first proceeding, by being called as a witness therein, may subsequently commence a suit against the debtor, without the knowledge of the judgment creditor, and through the debtor's default, obtain a judgment, establishing a pretended lien upon the identical property that the judgment creditor is in pursuit of, and thereby forever conclude the judgment creditor from litigating the question of the right and title to the property.

II. In order to estop, or conclude, the plaintiffs by the records in the bank and seminary suits, introduced by the de-

---

Voorhees *v.* Seymour.

---

fendant—or to entitle the defendant to put them in evidence—the plaintiffs in the judgments on which this action is founded, and the receiver, should have been made parties to those actions. (1.) The defendant, Seymour, by being sworn and examined as a witness in the supplementary proceedings mentioned in the report of the referee, had notice, and the bank, thereby, also had notice, not only of the existence of the judgments against Leitch, and the names of the judgment creditors, but also of the fact that proceedings were pending for the appointment of a *receiver*, before the commencement of either the seminary or bank suits; and such notice was sufficient to put the bank upon inquiry as to whether a receiver was appointed; and the bank was bound to have made the receiver a party to the suits, as soon as he became such receiver, without special notice that he had been appointed. (2.) The bank was bound to have made the receiver a party to the bank suit, as soon as Jewett served a notice on Seymour of the appointment of the receiver, in order to conclude the receiver. (3.) The receiver had been appointed, and Jewett had served on Seymour notice of such appointment, before any complaint had been filed or served in the bank suit, and before there was any paper in existence, showing the object of the action. Nothing had then been done but the service of a summons on Leitch; and, if the bank had not intended to prevent a fair litigation of the question, the summons would then have been amended, and the receiver made a party to the suit. (4.) From the time the appointment of the receiver became perfected—by force of such appointment (and before any complaint had been filed or served in the bank suit)—the receiver became vested with the bank stock in question, and all other personal property of Leitch. (*Porter* v. *Williams & Clark*, 5 *Selden*, 142. *Wilson* v. *Allen*, 6 *Barb.* 542. *West* v. *Fraser*, 5 *Sandf.* 6 3.)

III. Not only were not the plaintiffs in this action—the plaintiffs in the judgments, upon which the action is founded—the owners thereof, nor any of them, *parties* to either the

Voorhees *v*. Seymour.

*bank* or *seminary* suits, but the plaintiffs in this action are not, nor are either of them, *privies* thereto, within the meaning of the rule by which an adjudication concludes both *parties* and *privies*. (1.) The exceptions to the general rule are very numerous; and, indeed, the rule seems to have been relaxed, whenever there was the slightest change in the relation or character of the parties, or when the circumstances of the particular case seemed to require it, in order to do justice between the parties, viz: " A judgment is not to be used as an estoppel against a party who does not stand in the same relation or character as in the former suit." (1 *Phil. Ev.* 323.) " A verdict for the defendant, in a suit by the payee of a note, in his own right, will form no bar to a suit brought in the name of the payee, for the use of the true owner." (4 *Yerg.* 4.) " A party suing as *executor*, in an action of debt upon a bond, will not be estopped by having been barred in an action upon the same bond, where he sued as *administrator*." ( 1 *Phil. Ev.* 323.) There is no *privity* between an executor or administrator, and the heir or devisee of the deceased; and a judgment against the former is not evidence in an action against the latter to charge the real estate. (*Mason's Devisees* v. *Peters' Adm'rs*, 1 *Munf.* 437. 1 *Stark. Ev.* 257, *n*. 1.) Where the same party sues, or is sued, in a different capacity and in a different right, he will not be concluded by the former record. Thus, if a party sue, as *administrator*, and fail, he will not be estopped from maintaining an action against the same defendant, as *executor;* so, if one claim as heir to his father, he will not be estopped from afterwards claiming as heir to his mother." (*Stark. Ev.* 264.) (2.) In the bank suit, the cause was never at issue ; it was never tried ; but one side of the question has ever been heard ; and, for aught that appears, there was collusion between the bank and Leitch. The bank took precisely such a judgment as it pleased, and there was no one to question it ; yet the bank seeks, now, to stifle *all* investigation, and protects itself by the record ! The policy of the law is, that every cause be once fairly and im-

partially tried; and no technical rule should be strained by the court to screen the defendant, and prevent a full and fair trial of the question to whom rightfully belongs this large amount of property, (3.) The supplementary proceedings, on the part of the judgment creditors, for the appointment of the receiver, and indeed *all* the proceedings on the part of the plaintiffs, have been *hostile* to Leitch. (4.) The receiver has a twofold relationship; the property of the debtor is vested in him, and he also represents the *creditors :* and, as the representative of creditors, may maintain an action to annul the acts of the debtor which are prejudicial to creditors. (*Porter* v. *Williams,* 5 *Seld.* 142, 149. *Wilson* v. *Allen,* 6 *Barb.* 542. 3 *Comst.* 479, 488.) (5.) A receiver is an officer of the court; and is considered properly the hand of the court. And his position is far more important than that of a mere representative of the debtor. (1 *Barb. Ch. Pr.* 658. *Booth* v. *Clark,* 17 *How. U. S. R.* 322, 331.)

*Geo. Underwood* and *A. J. Parker,* for the respondents. In the suit by the Theological Seminary the summons was served on Leitch on 22d July, 1850. In the suit by the bank, on 3d August, 1850. The order appointing Talcott receiver was made on 6th September, 1850, and he did not file his bond until 19th September, 1850. I. The judgments recovered in these cases were conclusive upon the parties and their privies, in all collateral proceedings. (*Embury* v. *Conner,* 3 *Comst.* 511, *and cases there cited.* 3 *Term Rep.* 301. 2 *Cow. & Hill's Notes,* 804 *to* 812, 971. *Phil. Ev.* 324, 380. *Preston* v. *Harvey,* 2 *Hen. & Mun.* 55. *Greenl. Ev.* §§ 522, 523. *Candee* v. *Lord,* 2 *Comst.* 275. *Rogers* v. *Haines,* 3 *Greenl.* 362. *Adams* v. *Barnes,* 17 *Mass. Rep.* 365.) (1.) Leitch and Talcott were "privies in estate," if the latter took by assignment—and privies in law if the latter took under the order appointing him receiver; and the latter having taken his title after the former had been sued as a party, is bound by the proceeding. (2.) "The term 'privity' denotes

mutual or successive relationship to the same rights of property." (*Greenl. Ev.* § 189.) The plaintiffs are in privity with Leitch, because they make their claim through him. (3.) A record in one suit cannot be read in evidence in another unless both parties, *or those under whom they claim*, were parties to both suits: it being a rule that a record cannot be used against a party who could not avail himself of it, in case it made in his favor. (*Dale* v. *Rosevelt*, 1 *Paige*, 36.) In this case, if judgment had been rendered against the seminary and the bank, in the suits brought by them against Leitch, &c. there is no doubt Talcott, the receiver, might show it and avail himself of such judgments, in this suit, or in a new suit brought by the bank. (4.) To whose rights did Talcott succeed when he became receiver? Either to those of Leitch alone, or at most, of Leitch and his creditors. As the representative of Leitch, he was of course bound by the previous service of process on Leitch. As a representative of the creditors, he stood in the place of those never entitled to be made parties. (*Porter* v. *Williams*, 5 *Seld. R.* 142.) (5.) If it be said the plaintiff should have made Talcott a party after he succeeded to the interests of Leitch, the answer is—*First*. That the plaintiff had no knowledge of such appointment till after the judgment was entered. *Second.* It was unnecessary, and the suit was properly carried on in the name of Leitch as defendant. It is only in case of *death*, *marriage*, or other *disability*, that the plaintiff may get the suit continued against the personal representatives, on motion, or by supplemental complaint. (*Code,* § 121.) In case of *any other transfer of interest*, the action shall be continued in the name of the original party, or the court may allow the person to whom the transfer is made to be substituted in this action. This means, of course, on the application of such person. (*Code,* § 121.) Before the code, an adjudication was binding not only on the defendant but on all who came in under him *pendente lite*. (*Kershaw* v. *Thompson*, 4 *John.*

*Ch. R.* 609.   *See form of decree of foreclosure,* 2 *Barb.*
*Ch. Pr.* 614.)

II. But there is a still stronger reason why the judgments
recovered by the seminary and the bank are conclusive upon
Talcott.   They were both proceedings *in rem*—proceedings
to enforce a specific lien, and decisions *in rem* are binding
and conclusive not only upon the parties actually litigating
the cause and their privies, but upon all others, if the suit
was commenced against the proper parties, and if the judg-
ment was obtained *bona fide* and without fraud.   *Greenl. Ev.*
§§ 525, 540, 541, 542, 544, 555.   1 *Stark. Ev.* 546, 547.)
Proceedings *in rem* are conclusive on all the world.   (*By*
*Ruggles, J. in Wadsworth* v. *Sharpsteen,* 4 *Seld. R.* 392.)
(1.) A bill to foreclose is a proceeding *in rem* until the prem-
ises are exhausted.   It is only a proceeding *in personam*
where a decree is claimed for a deficiency and as to that part
of the claim.   (*Johnson* v. *Fitzhugh,* 3 *Barb. Ch.* 360.   *Ker-*
*shaw* v. *Thompson,* 4 *John. Ch.* 613.)   (2.) The adjudica-
tion on the lien, being the proceeding *in rem* is all that
is in question in this case.   Talcott, the receiver, has no in-
terest in the question whether the bank had a judgment for
the deficiency.   (3.) In a proceeding *in rem* any person hav-
ing an interest may make himself a party by applying to the
proper tribunal before which such proceeding is had; and
who will therefore be bound by the sentence or decree of such
tribunal although he is not in fact a party.   (*Bogardus* v.
*Clarke,* 4 *Paige,* 626.   *Scott* v. *Sherman,* 2 *Wm. Black.*
*Rep.* 977.   *Hart* v. *McNamara,* 4 *Price,* 154, *n.*)

III. No *fraud* or *collusion* is alleged in the complaint, and
of course the proceedings cannot be impeached in this action.
The plaintiffs only ask for an account, and the judgments by
virtue of which the bank held the money are the account and
settlement thereof by the court.   (2 *Comst.* 275.)

IV. It appears by the pleadings and judgments that both
in the suit by the seminary and in the bank suit, the process
was served not only on Leitch, but also on Moses & Ostrand-

Voorhees *v.* Seymour.

er, the general assignees of Leitch, and that Moses & Ostrander appeared in both actions. They being the general assignees, *prima facie* no interest vested in Talcott, as receiver.

V. There is a misjoinder in the parties plaintiffs. No joint cause of action was established in the two, and they cannot unite in the action.

VI. As to Voorhees, an alleged judgment creditor, he would in no case be entitled to be made a party defendant in a suit to foreclose a lien by the bank, and as to him, therefore, the records of judgment were conclusive. (2 *Comst.* 275.)

VII. The supplementary proceedings commenced 30th April, 1850, created no lien on Leitch's property. The title vests only in the receiver when his appointment is perfected. (*Porter* v. *Williams*, 5 *Seld.* 142.) The doctrine of *lis pendens* in case of a creditor's bill filed, is not applicable to an order for examination of a defendant in supplementary proceedings—here no papers are *filed* and there can be no *constructive* notice to other persons. (1 *Paige*, 637, 640. 3 *Atk. R.* 357. 2 *Paige*, 567.)

VIII. Before these supplementary proceedings were commenced, the whole interest of Leitch had passed by assignment to Moses & Ostrander, and all their acts are protected. (4 *Paige*, 24.)

IX. Even if a lien was vested in the creditor on commencing supplementary proceedings, it is not available in this action. Because, 1. The bank had no notice of such proceedings. 2. The bank suit was *in rem* and bound others as well as parties and privies. 3. It was at most but an inchoate equitable lien, and not such a lien as made it necessary to make a mere creditor a party. 4. *No such lien is alleged in the complaint*, but the claim made is that Leitch was the absolute owner till Talcott was appointed receiver. 5. Suppose a general creditor's bill had been filed, instead of the supplementary proceedings. It would not affect an assignee in possession not made a party. (1 *Paige*, 637.) It would not affect a

pledgee in possession, like the bank. Its object would be to reach the interest in the surplus after the pledgee was satisfied. A general creditor's bill would reach no more. If a bill was filed to contest the alleged lien of the pledgee, it would be special, and the pledgee would be a necessary party The only priority a creditor's bill ever obtained was over other creditors' bills and over a subsequent purchaser from the debtor who was supposed to have had notice by the filing of the creditor's bill.

X. The examination of Mr. Seymour on 26th June, 1856, was clearly no notice to the bank, even if notice were available. The object of that examination was to get information from Mr. Seymour, not to give it to him. He had no knowledge of the nature or object of the proceedings. In testifying, Mr. Seymour acted personally and not officially, and even knowledge acquired under such circumstances would not affect the bank. (*National Bank* v. *Norton,* 1 *Hill,* 572, 579.) Notice to a director, *when not engaged in the business of the bank,* is not notice to the bank. (*Ang. & Ames on Corp.* 247, 248, *and cases there cited.*)

*By the Court,* BACON, J. The plaintiff Voorhees, before the commencement of this suit, became the owner by assignment to him of a large number of judgments recovered against George F. Leitch, amounting in the aggregate to nearly the sum of $40,000. Among these were two judgments, one in favor of Obadiah Thorne, and one in favor of Elias Thorne recovered on the 28th of February, 1850, upon which executions had been duly issued and returned unsatisfied. Upon the return of these executions and on an application pursuant to the 292d section of the code, an order was granted, on the 30th of April, 1850, for the examination of the judgment debtor Leitch; and the examination having been had before a referee, upon his report an order was made by the justice before whom the original proceeding was taken, appointing Talcott, the co-plaintiff, receiver of the property of Leitch.

Voorhees *v.* Seymour.

This order was made on the 6th of September, 1850, but the security required on entering into the receivership was not approved until the 10th, and was not filed until the 19th of September, 1850. Prior to the recovery of any of the judgments now held by the plaintiff Voorhees, Leitch was the owner of 1352 shares of the stock of the Bank of Auburn, of which 388 were pledged to the Auburn Theological Seminary, to secure a debt owing to the institution by Leitch; 366 to Henry Mills for a similar purpose, and upon the balance, the Bank of Auburn claimed to hold a lien by way of pledge to them for a large indebtedness of Leitch to the bank. In July, 1850 the Theological Seminary commenced a suit against Leitch and various other parties, including the Bank of Auburn, the result of which suit established their claim; the stock pledged to them was sold, and a surplus arising from the sale was paid over to the bank, to apply on their indebtedness. Subsequently to this, and in the month of August, 1850, the Bank of Auburn commenced a suit to assert their lien on the shares of stock claimed to have been pledged to them, in which suit Leitch and his general assignees were made parties with other defendants. That suit was not defended by either Leitch or his assignees, and resulted in a judgment establishing the lien of the bank as claimed, and the stock, pursuant to the decree, was subsequently sold, and the proceeds passed into the hands of the bank, and were applied upon their indebtedness, leaving a large balance still due ; for which deficiency judgment has been duly docketed against Leitch.

The ground upon which the plaintiffs claim to hold the stock, and assert a right thereto paramount to that set up by the defendants by virtue of the judgments which established their claims, is, that by commencing the supplementary proceedings, and obtaining the order for the examination of the judgment debtor, before either the seminary or the bank suits had been instituted, Voorhees, the owner of the judgments against Leitch, acquired a prior right to the stock, which

could not be defeated by the subsequent suits to which neither he nor the receiver were made parties. It is insisted that under the code, the simple order for an examination under the 292d section gives the judgment creditor the same lien upon the debtor's equitable assets that was acquired by virtue of a creditor's bill under the former chancery practice. The rule under the old system was well settled, that a creditor who had an execution returned unsatisfied would, by filing a bill and serving process upon the party, obtain a specific lien upon the equitable assets of his debtor. (*Edmeston* v. *Lyde*, 1 *Paige*, 637.) And the creditor who first filed his bill and commenced his suit, obtained a priority over other creditors, who had only exhausted the legal remedy by the issuing and returning of executions unsatisfied. (*Corning* v. *White*, 2 *Paige*, 567.) The doctrine proceeded upon the ground of constructive notice by virtue of an actual *lis pendens*, and this effect was given to the suit as the reward of superior diligence on the part of the creditor who initiated the proceedings. Can so broad an effect be given to the order for examination of the debtor under the code? An order, it must be remembered, which is obtained *ex parte* at chambers, without notice, and which may never, in any stage of the proceeding, become a matter of record. It must be conceded that neither in the section itself, nor in any other part of the code, is any such effect imparted to the order, and I find no case since the code that purports to establish or impliedly recognizes this doctrine, excepting the case of *Porter* v. *Williams*, (5 *How.* 441.) This appears to have been a special term decision by Judge Harris. In the course of his decision, the judge says, "The code is silent as to the time when the judgment creditor shall be deemed to have acquired a lien upon his debtor's equitable effects, *but I think* the order for his examination made under the 292d section, should be construed to give the creditor the same lien which he acquired under the former practice by the commencement of a suit by creditor's bill."

If this had been a carefully considered and deliberate opin-

Voorhees *v.* Seymour.

ion, and the point had necessarily arisen in the determination of the case, my habitual respect for the opinions of the learned justice would induce me to receive it without much doubt or question. In truth, however, it amounts to but little more than a suggestion of what the rule might be, and was not necessarily involved in the decision of the cause. The real and vital point in the case of *Porter* v. *Williams* was whether it was necessary in order to vest the title to the property of the judgment debtor in the receiver, that the debtor should execute a formal assignment, or whether he took this title and was invested with the interest by force of the appointment itself of receiver. This was all that it was necessary to decide to uphold the right of the plaintiff in that case to set aside a fraudulent assignment theretofore made by the judgment debtor, and this point was very clearly ruled by Judge Harris. The case went to the court of appeals, and the decision was there upheld upon this precise point ; the court affirming the doctrine maintained by Judge Harris, that the order appointing the receiver had the effect, without an assignment by the debtor, to divest his title and to vest it in the receiver. (*See* 5 *Seld.* 142.) Other questions were discussed and decided in that case as to the extent of the title to property acquired by the receiver, but they have no reference to the point we are now considering. It will be seen on reading the opinion of the court that the proposition suggested by Judge Harris as to the effect of the order for the examination of the debtor, was not passed upon in the court of appeals, as indeed it was not necessarily involved in the case. But the court do say that before the code, it was settled " that the order appointing a receiver, *when the appointment was completed,* vested in him all the property and effects of the debtor, subject to the order, without an assignment." This is in accordance with the decision in *Mann* v. *Pentz,* (2 *Sand. Ch. Rep.* 257,) and in *Wilson* v. *Allen,* (6 *Barb.* 542.) The implication from these decisions is very strong, if, indeed, the conclusion is not irresistible, that until

the order for a receivership is made, and the appointment per-fected, no interest whatever of the debtor passes to the receiver, and no title to any thing whatever is acquired by him. It would be giving the naked order for an examination a very far reaching effect to hold that all the equitable assets of the debtor passed out of him *eo instanti* the order for his exami-nation was made, and although there were no other party in existence that could take, they were to be held in abeyance until perchance, at some time thereafter, a receiver should be appointed in whom the title could vest.

It may be, indeed, that as between two or more creditors who are upon the chase—"*pedibus manibusque*"—after the equitable assets of their debtor, the one who procures the first order may acquire a sort of inchoate lien entitling him to an ultimate preference, provided he pursues his remedy diligently, and consummates the proceeding by an order for a receiver-ship, and an appointment following thereon. But even in such a case, if the creditor obtaining the first order quietly folds his hands, and takes no farther step, but permits a sec-ond order to be obtained, an examination to be had, and a receiver appointed and qualified, I should seriously question whether the latter would not override the first order, and the creditor obtaining it entitle himself to a preference not only on the ground of his superior diligence, but in accordance with the principle that it was the order for the receivership, completed by the appointment, that drew after it the title to the equitable assets and made them enure to the benefit of the party who procured the order, and perfected the appoint-ment. This would be in harmony with the doctrine of the court of chancery, which gave the preference to the creditor whose execution was first returned, provided he followed it up by a creditor's bill, and the steps consequent thereon. "But," as the chancellor says in *Edmeston* v. *Lyde,* " if he abandons the pursuit, or lingers on the way, before he has obtained a spe-cific lien, he has no right to complain if another creditor obtains a preference by superior vigilance." The time honored max-

Voorhees *v.* Seymour.

im holds good here as elsewhere, " *Vigilantibus, non dormientibus leges subveniunt.*"

It results from this conclusion, that when the Bank of Auburn commenced their suit against Leitch and others in August, 1850, the title to the stock, or the resulting equitable interest in it, still remained in him ; or had passed to his general assignees, and they, together with Leitch, were made parties to the suit. It needs the citation of no authority to show that a judgment between these parties, in regard to the subject matter of that suit, was entirely conclusive upon them when sought to be again called in question, either directly or incidentally, before any other forum. But it not only concludes the parties themselves, but is equally binding upon all who stand in the relation of privies to them. For, as Greenleaf states the proposition, (1 *Greenl. Ev.* § 523,) " to give full effect to the principle by which parties are bound by a judgment, all persons who are represented by the parties, and *claim under them*, or in privity with them, are equally concluded by the same proceedings." The extent of this rule is comprehensively stated by Spencer, J., in *Case* v. *Reeve*, (14 *John.* 81.) " A verdict or judgment in one action upon the same matter, directly in question, is evidence for or against privies in blood, privies in estate, such as feoffee, lessee, &c., and privies in law, as tenant by curtesy, &c. and others who came in by act of law in the *post.*"

It is very clear that the general creditors of Leitch were in no respect entitled to be made parties to that suit, and of consequence Voorhees, as the assignee of the judgments, was not a necessary party.

Talcott, the receiver, succeeded to the rights of Leitch alone, or to those of Leitch and his creditors, and he so succeeded to those rights on the 19th of September, 1850. If Leitch had then made an actual assignment to Talcott, the latter would have been a privy in estate ; if he succeeded to the rights of Leitch, by the order appointing him receiver, he became a privy in law, and in either case his title accrued

after the suit had been commenced against Leitch, and consequently as being in privity with him he was bound by the proceeding, for privity means mutual or successive relationship to the same right of property.   (*Greenl. Ev.* § 129.)

But it is claimed that when the Bank of Auburn was apprised of the existence of the receivership, Talcott should at once have been made a party, and that unless so brought in, he could not be concluded by the judgment in that suit.   The answer to this is, that the bank had no notice of his position, until the 16th of November, long after the suit had been commenced ; for it can hardly be pretended that the bank was chargeable with such notice, from the mere fact that Seymour, the cashier, had been examined before the referee, under the order for the examination of the judgment debtor.   He was not acting, on this occasion, as the representative or agent of the bank, and any information he may have thus gained was notice of no fact by which the bank could be bound.   The acts of a director or other officer of a corporation, unless official, or in respect to his agency, are no more operative against the corporation than the acts of any ordinary corporator.   (*National Bank* v. *Norton,* 1 *Hill,* 579.)   But there is no principle of law which required the plaintiffs to bring in any party who had succeeded to the rights of a defendant *pendente lite.*   In case of death, marriage; or other disability, the plaintiff may have the suit continued against the personal representative or successor in interest, by motion, or supplemental complaint, but the code expressly provides that in case of any other transfer of interest, the action shall be continued in the name of the original party, or the court may allow the person to whom the transfer is made, to be substituted in the action.   (*Code,* § 121.)   The receiver, on making such application, would doubtless have been allowed to come in as a defendant in the suit, but the plaintiff was under no obligation to move on his behalf, and standing in the position that the receiver did to Leitch, the proper party on the record,

he was bound by the adjudication in relation to the subject matter of the suit.

This result, it seems to me, necessarily follows from such a judgment, whether rendered upon default, confession, or after contestation; and it can in no way be impeached, except upon an allegation that it was obtained in bad faith, or by collusion between the parties. This principle is well and strongly stated by Gardiner, J., in *Candee* v. *Lord*, (2 *Comst.* 275.) "In establishing the relation of debtor and creditor, the debtor is accountable to no one unless he acts *mala fide.* A judgment, therefore, obtained against the latter without collusion is conclusive evidence of the relation of debtor and creditor, against others; first, because it is conclusive between the parties to the record, who in the given case have the exclusive right to establish it; and second, because the claims of other creditors upon the debtor's property are through him, and subject to all previous liens, preferences or conveyances made by him in good faith. Any deed, judgment, or assurance of the debtor, so far, at least, as they conclude him, must estop his creditors, and all others." In this case no fraud or collusion whatever is alleged in the complaint, and the plaintiffs have not put themselves in any position to challenge the judgment upon this ground.

Without discussing the other point urged on the part of the defendant—that the proceeding of the Bank of Auburn to enforce the specific lien claimed, upon the stock, was a proceeding *in rem*, and was therefore conclusive, not only upon the parties litigating the cause, but upon all other parties whatever, no matter what position they occupied—I think the referee properly held that the actions prosecuted by the Theological Seminary and by the Bank of Auburn, were conclusive against the right of action asserted by the plaintiffs, and established, incontrovertibly, the claim of the defendant in this suit to the stock, and the avails thereof, and

that the judgments could not be collaterally impeached in this suit.

The judgment rendered upon the report of the referee must consequently be affirmed.

PRATT, J., dissented.

Judgment affirmed.

[ONONDAGA GENERAL TERM, October 6, 1857. *Wm. F. Allen, Bacon, Pratt* and *Hubbard,* Justices.]