## NEW YORK COMMON PLEAS.

HENRY C. BANKS and others agt. OTIS R. POTTER and others, and nine other cases.

In proceedings supplementary to execution, when the *receiver* has given *ample security* on his first appointment, there is no necessity for requiring him to give security over again in every proceeding which may be afterwards instituted.

*New York Special Term, April*, 1861.

THIS motion was made arising upon exceptions to set aside or modify the report of Luther R. Marsh, referee, to whom was referred ten proceedings, supplemental to the return of executions, to ascertain their priority to payment. A receiver was appointed in the first proceeding, and gave the requisite security; subsequently, other proceedings were instituted, in which the same receiver was appointed, and in some of them he was ordered to give additional

security and in others not. In the case of Grandison F. Read, who excepted to the report of the referee, the judge, before whom the proceedings on his judgment were instituted, did not order the receiver to give any security. The referee excluded this judgment from payment by the receiver, holding that security was necessary to be given by a receiver, in every proceeding, to entitle such judgment to payment in its regular order.

C. Bainbridge Smith, *for Read.*
T. C. T. Buckley, *for other creditors.*

Daly, F. J.   The referee, in determining the equitable priorities of the twenty-five parties who had instituted supplementary proceedings, to the assets in the hands of the receiver, reports, that the judgment creditor Read must be postponed to creditors who had instituted proceedings afterwards, because Read, though he had proceeded to and obtained the appointment of a receiver, did not consummate the appointment by the filing of security. The referee holds, that judgment creditors, who had obtained the appointment of a receiver subsequently to Read, and given security, have, as respects him, a prior equitable lien.

It appears that there were ten judgment creditors, who had instituted proceedings before Read. In all of these cases the appointment of a receiver was obtained, and in each of them security was filed. In the fourteen cases after Read, the appointment of a receiver was obtained, in some of which security was filed, and in others not. The referee reports, that those of the fourteen who had consummated the appointment of a receiver, by the giving of security, are entitled to have the assets applied to the satisfaction of their judgments before Read, according to their respective priorities, in perfecting the appointment of a receiver, by the filing of security; the effect of which would be to cut Read off, as it is conceded that the claims of the parties

thus declared to be entitled to priority are more than sufficient to exhaust the fund.

If Read had obtained the first order for the appointment of a receiver, and had neglected to perfect the appointment by the filing of security, the decision of the referee would be right, for though an inchoate lien upon the equitable assets is obtained by the institution of supplementary proceedings, it is essential that the creditor should go on and perfect the lien by taking all the necessary steps to consummate the appointment of a receiver; or creditors, who are more vigilant, will obtain priority over him. The appointment of a receiver is not perfected until he has filed the requisite security, and when that is done his appointment operates by relation, from the time that an order was made for the appointment of a receiver. (1 *Smith's Chancery Practice*, 802, 497; *Fairfield* agt. *Weston*, 1 *Sim. & Stewart*, 96; *Lottimer* agt. *Lord*, 4 *E. D. Smith*, 183; *Wilson* agt. *Allen*, 6 *Barb.*, 543; *In the matter of the Eagle Iron Works*, 8 *Paige*, 383; *West* agt. *Fraser*, 5 *Sandf. R.*, 653; *Voorhees* agt. *Seymour*, 26 *Barb.*, 581.) By the practice which existed before the Code, the order for the appointment was to the effect that the master, unless the court appointed the receiver, should take from the person appointed by him the usual security, which was his own bond, with two sureties, for the performance of his trust, and file it in the proper office; and that upon filing the report of the master, and of such security, that the person appointed should be vested with all the rights and powers of a receiver, according to the practice of the court. (2 *Barbour's Chancery Prac.*, 522, *precedents Nos.* 277, 280; *Mead* agt. *Lord Orrery*, 3 *Atk.*, 237.) But the court in a proper case might dispense with the giving of sureties, and when the order was to that effect, the appointment was complete by the filing of the receiver's own bond, which, however, was indispensable, as the court would not, even with the consent of the parties, sanction the appointment unless the re-

ceiver's own bond was filed. (*Carlisle* agt. *Berkley, Amb.* 599; *Ridout* agt. *Earl of Plymouth,* 1 *Dick.,* 68; *Manners* agt. *Fruze,* 11 *Beav.,* 30; *Connelly* agt. *Codd,* 1 *Hay. & J.,* 624; *Hibbert* agt. *Hibbert,* 3 *Mer.,* 681.)    When several bills were filed by different creditors to reach the effects of a debtor, the same person was appointed receiver in all the suits, and was required by the 193d rule of the court of chancery to give *security sufficient* to cover the whole property or effects of the debtor which might come into his hands; and if another bill was filed after the appointment of a receiver was made, the same person was appointed, and was required by the 194th rule to give " such further security " as the master to whom the order for the appointment was referred might direct.    This additional security was intended to cover any property of the debtor discovered or acquired since the last appointment. (*Cagger* agt. *Howard,* 1 *Barb. C. R.,* 370; 1 *Barb. Ch. Prac.,* 673.)

It appears from the referee's report, that the judge, in making the order for the appointment of a receiver in the case of Read, did not require security to be filed, and the order was accordingly entered without any requisition to that effect.    This direction on the part of the judge proceeded doubtless from a conclusion that the security already given was sufficient, and of his power to dispense with it, there can be no doubt.    He is authorized by the Code to appoint in the same manner as if the appointment was made by the court.    The obligation to give security is founded in the practice of the court (*Mead* agt. *Lord Orrery,* 3 *Atk.,* 237;) and it is undoubtedly in the power of the court to dispense with it in cases where it is clearly unnecessary. The referee acted upon the impression that the appointment of the receiver was not perfected in Read's case until the receiver had filed security.    This might be so if the order had required it, but as it did not, the appointment was perfected and complete without it.    The object in requiring security on the part of the receiver is to secure the

faithful administration of his trust; and if the security given by him is sufficiently ample to cover all the property of the debtor which has or can come into his hands, the object sought to be attained by the giving of security, is accomplished. To require him to give security in every proceeding that is instituted, that is, in a case like this, to give it twenty-five times over, is unneccessary and useless; he is an officer of the court; for though appointed by a judge out of court in proceedings supplementary, he is appointed in the same manner as by the court, and the order must consequently be entered and the bond filed in the court where the judgment was obtained, upon which the supplementary proceedings were founded. The administration of the debtor's effects must necessarily take place under the control and direction of the court where the order appointing a receiver was first entered, whose officer he becomes for that purpose. If proceedings supplementary be afterwards instituted upon judgments in other courts, the same receiver must be appointed, and the effect of the appointment is to give to the creditors in these proceedings an equitable right to the distribution of the debtor's effects, which must be according to their respective priorities in obtaining the appointment of a receiver. (*Kavanagh* agt. *Murphy, Jones & Co.*, 273.) This distribution must be under the direction of the court where the order for the appointment of a receiver was first entered, for it would lead to conflict and confusion if the different courts which may afterwards appoint a receiver should engage in the administration of the trust, or undertake to control and direct the distribution. Each of them being equally competent, it must be left to the one that first appointed the receiver to protect the rights and watch over the equitable interests of the different parties interested in the administration of the trust. As the officer of that court, the receiver is appointed for the benefit of all creditors who have commenced, or shall commence, similar proceedings. (*Os-*

*born* agt. *Heyer*, 2 *Paige*, 342 ; *Iddings* agt. *Bruen*, 4 *Sandf.
Ch. R.*, 417 ; *Howell* agt. *Ripley*, 10 *Paige*, 43 ; *Edwards on
Receivers*, 405, 2 *Ed.*) The provision in the Code is in
effect the same as the practice of the English and Irish
courts of equity, by which the receiver appointed in the
first creditor suit is extended over the suits afterwards
commenced by creditors. (*Thackberry* agt. *Christian*, 1 *Ho-
gan*, 109.) The property in his hands is not deemed the
property of the party in the first proceeding, at whose
instance he was appointed, but it is in *custodia legis* for
those who shall establish a right to it according to their
respective priorities, (*Delany* agt. *Mansfield*, 1 *Hogan*, 234 ;
*Portman* agt. *Mills*, 8 *L. J.*, [*N. S.*] *ch.* 161,) and the re-
ceiver, therefore, cannot be discharged on the application
of the party at whose instance he was appointed, while there
are other parties interested. (*Bainbridge* agt. *Blair*, 3 *Beav.*,
421 ; *Largan* agt. *Bowen*, 1 *Sch. and Lef.*, 296.) In that
court he files security upon his appointment, and if it is
inadequate in consequence of the discovery of additional
property of the debtor or of a new acquisition of property
by him, the proper course is to require him to give further
security. The court that appointed him will, upon the
application of any party interested, compel him to do so,
and if he should not it will remove him and appoint another
receiver. (*Cagger* agt. *Howard*, 1 *Barb. Ch. R.*, 370.) The
bond which he gives is not to the party at whose instance
he was appointed. It is to the clerk of the court that
appointed him, or to the people, and the condition is, that
he will obey such orders as the court appointing him may
from time to time make, and faithfully discharge the duties
of the trust (*Barbour's Chancery Practice, vol. 2, p. 522,
precedent No.* 282,) and the bond may be prosecuted upon
the application and for the benefit of any party interested.
(3 *Daniels' Chancery Practice*, 543; 2 *Bulst.*, 62.) When
the receiver, therefore, has given ample security upon his
first appointment, there can be no occasion for requiring

him to give security over again in every proceeding which may be afterwards instituted. In every subsequent proceeding in which the appointment of a receiver is obtained, the receiver first appointed, by the express permission of the court, must be named. He is thus extended over all these proceedings, and, as I have said, holds the property of the debtor for the benefit of the respective parties in each proceeding, to be distributed according to the direction of the court by which he was first appointed.

Holding that Read had not obtained the appointment of a receiver, the exception to this part of his report is well taken.