## FIRST NATIONAL BANK OF LARAMIE ET AL. v. COOK, AS RECEIVER, ET AL.

PROCEEDINGS IN AID OF EXECUTION — APPOINTMENT, DUTIES AND POWERS OF RECEIVER—JURISDICTION—CLAIMS OF THIRD PARTIES— RIGHTS OF PARTIES WITH MORTGAGES AND LIENS UPON PROPERTY OF JUDGMENT DEBTOR—PRACTICE.

1. By the statutory proceeding in aid of execution (R. S., Secs. 3932-3957), a summary method is provided of discovering property subject to plaintiff's execution and applying it thereto when discovered; but the taking over and conducting of defendant's business, the marshaling of liens, and the settlement of disputed titles are foreign to the proceeding.

2. Existing liens upon the property of the judgment debtor are not displaced or affected by the appointment of a receiver in the statutory proceeding in aid of execution.

3. The receiver appointed in proceedings in aid of execution succeeds only to the title of the judgment debtor, and as to property incumbered by liens he has only such rights as the judgment debtor had at the time of the appointment.

4. Proceedings in aid of execution provided by statute are summary, and, in such proceedings, disputes between the debtor

and third persons cannot be settled, nor the collection of claims enforced by an order of payment and attachment; the receiver must resort to his appropriate action for the purpose.

5. The powers and functions of a receiver appointed in a proceeding supplementary to execution under the statute are limited by the purposes of the statute under which such appointment is made, viz.: to demand and sue for, under the order of the court, and to take into his possession money, property, and interests of the judgment debtor, and apply them to the satisfaction of the judgment.

6. Persons holding liens upon the property of the judgment debtor, not parties to the main suit nor the supplementary proceedings, except by intervention in the latter to enforce their claims, are not concerned with the appointment of a receiver in the supplementary proceedings, and are not in a position to complain of such appointment.

7. A lienor not a party to the main suit nor the supplementary proceeding, except by intervention to enforce his claim, is not estopped from objecting to the possession and control of the receiver of the property of the judgment debtor subject to the lien, from the fact that he consented to the receiver's appointment; such appointment concerning only the parties to the original action, and the lienor testifying that he did not understand the receiver was to take his property.

8. In proceedings supplementary to execution, under the statute, the court has no authority to order property applied to the satisfaction of the judgment unless the title of the defendant thereto is clear and undisputed.

9. A third party claiming an interest in the property of the judgment debtor has the right to have the issue tried in the regular, ordinary way, rather than in the summary supplementary proceeding, and to have the protection of a trial by jury in cases where the right to a jury trial is secured.

10. Though the legislature might provide for the determination of all conflicting claims in the supplementary proceeding, authorizing issues to be formed therein and submitted, the present statute makes no such provision and confers no such jurisdiction.

11. In the statutory supplementary proceedings brought by a judgment creditor it was not competent for the court to take under its control the real and personal property of the defendant partnership, connected with their ranch and cat-

tle business, and administer and conduct such business through its receiver appointed in such proceedings, and thereby prevent third persons holding liens upon such property from proceeding to enforce the same.

12. It was not proper for the court to order the sale by the receiver so appointed of cattle or other property of the judgment debtor, covered by the liens of intervening third parties, for the purpose of appropriating the proceeds to the payment of the costs of the supplementary proceedings, the conservation of the property in the receiver's hands, the other expenses of the receiver, and his compensation; such lienors not having been parties to the action, and not having consented to the custody of the receiver, and the order made by the court which was the only order authorized by statute, having merely appointed a receiver in the supplementary proceedings of the property of the defendants, without directing him to take charge of the particular property in question, and the claim that the entire beneficial interest in the property resides in the lienors being conceded, unless the judgment creditor is able to establish that such claims are wholly or in part fraudulent.

13. The burden of showing the claims of the lienors to be fraudulent is upon the judgment creditor, and any steps to establish such fraud should be taken by the receiver appointed at the instance of the creditor in the supplementary proceeding.

14. The court is without authority to adjudicate in the supplementary proceedings the claim of the judgment creditor that the alleged liens of third parties are fraudulent; it is the province of the receiver to institute appropriate actions or proceedings to test the validity of the alleged liens, and hence he was an improper person to be constituted referee to report upon the claims even if competent for the court to make any such reference in the supplementary proceedings.

15. A decree of foreclosure having previously been entered upon the mortgages covering the real property of the judgment debtors, though no sale had occurred under the decree, and the debts secured by the mortgages covering the personal property being overdue, and the conditions thereof forfeited by non-payment, there was nothing to vest in the receiver but the bare possession and a right of redemption.

16. The holders of liens upon the property of the judgment debtor in supplementary proceedings have the same right

to enforce their liens as if no receiver had been appointed in such proceedings.

17. The court would be authorized to enjoin the judgment debtor and the lienors from disposing of the property to the detriment of the judgment creditor in any way, except by the enforcement of the liens, and to require the lienors to pay into court or to the receiver, to be applied upon the execution or to the payment of the costs and expenses of the receivership, any residue after the satisfaction of the liens.

18. Sales of part of the property of a perishable nature having been made by consent of all parties in interest pending the litigation, and the proceeds thereof being in the custody of the court below, the same are approved, and *held* that such proceeds should be disposed of in conformity to the views expressed in the opinion, subject to any stipulations under which the sales were made.

#### ON PETITION FOR REHEARING.

1. Third parties who are creditors or claimants to the property of the judgment debtor are neither necessary nor proper parties to the statutory proceeding supplementary to execution.

2. Judgment was obtained against a partnership and the members thereof, and a proceeding under the statute instituted by the creditor supplementary to execution to subject the property of the partnership to the satisfaction of the judgment. *Held* that the proceeding was not a suit or proceeding for winding up the affairs and business of the partnership.

3. A receiver appointed in such a proceeding has no right to sell property incumbered by valid prior liens, so as to divest such liens, for the purpose of paying the expenses incident to his possession.

4. While an order might not have been proper permitting the lienors to take possession of the personal property in the receiver's possession, unless the latter admitted their right to possession, they should have been permitted to take necessary and lawful proceedings to protect and enforce their liens.

5. The receiver held the property subject to the right of other prior lienors and claimants; and as he had taken no proper proceedings to ascertain the extent of the incumbrances, but held adversely thereto, the lienors should have been permitted to protect themselves by suit against the receiver.

6. The supplementary proceeding is summary, and where the debtor's property is alleged to have been fraudulently conveyed, or it is subject to the claims or liens of third persons, there is a lack of necessary parties to permit of a proper adjustment of the interests of all parties and the rendition of a decree that will be effectual from a jurisdictional standpoint. In this respect there is a radical difference in practical operation between the statutory proceedings and a creditor's bill.

7. By the institution of a supplementary proceeding and securing the appointment of a receiver therein, the judgment creditor acquires a lien upon the equitable assets of the debtor, and the receiver becomes vested with power to enforce that lien, and to take all necessary steps to that end; but third parties claiming an interest in the property are not required to submit their claims for adjudication in the supplementary proceeding.

8. The matters involved in the disposal of the proceeds of sales of some of the property under stipulation pending litigation should be heard and determined by the district court; the appellate court not being the proper forum for that purpose.

[Decided April 25, 1904. Rehearing denied December 31, 1904.]
(76 Pac., 674; 78 Pac., 1083.)

ERROR to the District Court, Albany County, HON. RICHARD H. SCOTT, Judge of First Judicial District, presiding.

The facts are stated in the opinions.

*N. E. Corthell,* for plaintiffs in error.

The proceedings taken by the judgment creditor in the District Court and permitted by that court show a radical misconception of the office and nature of receiverships. It is not a device by which rights are created or destroyed, or conflicting claims determined, but an ancillary and provisional remedy rendered necessary by the existence of property or a fund which cannot be otherwise taken care of. A suit pending in a proper court in which there is a petition or application by one or more parties for relief

against others, showing a lawful cause of complaint and a lawful right to recover something is essential. The statutory power to appoint a receiver is strictly construed, and the power of appointment is reluctantly exercised and only after the exhaustion of other and less summary remedies. It must appear that there is property to be cared for, and that it can be cared for by a receiver more advantageously and justly than by any of the parties interested. (23 Ency Law, 1001-1092; Beach on Rec., Secs. 1, 2, 137, 139, 162, 163, 612, 621, 808, 810; High on Rec., Secs. 1-3, 9, 11; Smith on Rec., Secs. 1-3, 10-13; Pomeroy's Eq. Jur., 171, 1319, 1330; Sellers v. Stoffel (Ind.), 39 N. E., 52; Hutchinson v. Rice (La.), 33 So., 57; Schaack v. McKay, 100 Ill. App., 294; R. R. Co. v. Soutter, 69 U. S., 510; State v. Ross, 122 Mo., 435; Minkler v. Sheep Co. (N. D.), 62 N. W., 494.)

A court of equity must act upon established principles and through established channels. (Rees v. Watertown, 86 U. S., 107; Beach on Rec., 609, 615; High on Rec., 403, 439; Tornances v. Melsing, 106 Fed., 775; Pearce v. Jennings, 10 So., 511; Smith on Rec., 146; Williams v. Sexton, 19 Wis., 42; Thompson v. Allen County, 115 U. S., 550.) All the proceedings in the case at bar rest upon the motion and affidavit of the judgment creditor for the examination of Thomas Bird with the incidental request for the appointment of a receiver if the court should so determine. The papers were prepared to secure an examination and disclosure of assets by the managing partner of the judgment debtor. The showing of the affidavit, while probably sufficient for an examination of the debtor, is insufficient to secure the appointment of a receiver, had there been a direct suit for that purpose. Instead of pursuing the statutory remedy and obtaining an order under Section 3951 for the application of particular property toward the satisfaction of the judgment, the creditor asked and obtained an order showing a general appointment of a receiver of all the property of the debtors, under cover of

which the receiver seized upon and began to conduct and administer the entire business and all the tangible property of the firm. All of that property could have been seized under execution. The fact that by so doing the Sheriff might have become seriously responsible to third parties is not a sufficient excuse for authorizing him to take possession as receiver in the proceeding instituted by the creditor.

The statutes provide the ordinary legal remedies for enforcing judgments which take precedence over the extraordinary remedies of equity. (R. S., Secs. 3814, 3828, 3852, 3853, 3879-3893; Laws 1901, p. 101; R. S., Secs. 3901-3914, 3915-3924.) The proceedings authorized by statute for reaching property not obtainable under execution are not intended as a substitute for execution, nor to dispense with the usual or orderly proceedings heretofore practiced by courts of law or equity. The object of the proceeding is to compel the application of property concealed by the debtor, or which from its character cannot be levied upon by execution. (Edgerton v. Hanna, 11 O. St., 323; Schloredt v. Boyden, 9 Wyo., 392; High on Rec., 401; Smith on Rec., 146, 148, 150.) Proof by affidavit or otherwise that the debtor has property which he refuses to apply to the judgment simply authorizes the court to begin and conduct an inquiry for the purpose of disclosing such property, and this is the foundation for such further proceedings as are to be found in the ordinary processes and usages of courts. The mode of applying the property which may be discovered is not expressly provided, but it must be in analogy as to claims against third parties to the remedies to which the debtor himself might resort. Disputes between the debtor and third persons cannot be settled nor the collection of claims enforced by an order of payment and attachment. (Edgerton v. Hanna, *supra;* Schloredt v. Boyden, *supra.*)

The chief end of these proceedings may be said to be the accomplishment, by a sort of legal assignment, of a

transfer of property from a judgment debtor to the creditor, which cannot be had otherwise than by the intervention of the court. To authorize the court to appoint a receiver in such a proceeding there should be, (1) a verified application showing where and what the property is and why it cannot be taken upon a writ; (2) the court should make an order describing the property and directing its application to the judgment and the manner of such application, and (3) as incidental to and consequent upon these proceedings, in an appropriate case and upon a proper and sufficient application where a custodian seems necessary, to appoint a receiver of that property and direct its delivery to him and perhaps the manner of its disposition. None of these requirements were observed in the case at bar. Section 3954, Revised Statutes, clearly limits the powers of the court and a receiver in summary proceedings to the disposition of interests concerning which there is no controversy and which can be ascertained without litigation. There is no power in such proceedings to solve all controversies over property, to dispense with litigation, or to justify interference in this form with property of other persons which would be illegal if resorted to by other and better known remedies. (Rodman v. Henry, 17 N. Y., 482; McCoombs v. Merryhew, 40 Mich., 721; Arnold v. Bright, 41 Mich., 207; R. Co. v. Cir. Judge, 31 Mich., 456; Schaack v. McKey, 100 Ill. App., 294; Hutchinson v. Rice (La.), 33 So., 57; Silverman v. Kuhn, 53 Ia., 436; 5 N. W., 523, 535; Rees v. Watertown, 86 U. S., 107; Thompson v. Allen Co., 115 U. S., 550; R. R. Co. v. Soutter, 69 U. S., 510.)

If the receiver's appointment had been avowedly made for the purpose of administering and disposing of the property or interests of the plaintiffs in error or other third persons *sui juris,* either for their express benefit or otherwise, *in invitum,* it would have been clearly illegal and void, though there were express statutory authority therefor. (Appeal of Ervine, 16 Pa. St., 256; Gossom v. McFerran, 79

Ky., 236; Gilpin v. Williams, 25 O. St., 283, 298; Burke
v. Mechanics' Sav. Bk., 12 R. I., 513; Johnson v. Branch,
9 S. D., 116; 68 N. W., 173; Ames v. Port Huron Co.,
11 Mich., 139; Johnson v. Hudson, 96 Tenn., 630; 36
S. W., 380.) There was nothing in the order of the court
appointing the receiver from which any such purpose or
intent can be gathered.

A first mortgagee is entitled through a receiver appointed
at his suit pending litigation to the custody of the property.
(Anderson v. Matthews, 8 Wyo., 513.) Can it be that a
junior mortgagee, much less a judgment creditor, with no
specific lien and without any suit pending for the marshaling of liens or the appropriation of the property by lawful
remedies to the satisfaction of his debt, can suspend the
right of foreclosure by advertisement and sale, the right to
issue execution and sell under a judgment establishing a
mortgage lien, the right to the possession of the property
and its income so far as it may be necessary to pay prior
contract liens, and by a receivership charge the expenses
thereof upon the property or fund, so that the proceeding
may be set on foot and maintained not only in defiance of
the rights of the owners and lienors, but at their expense?

The order appointing the receiver was without jurisdiction because there was no sufficient application nor a finding by the court that the judgment debtors had property
applicable to the judgment, describing the same, and there
was no designation by the court in its order of the duty
of the receiver. It was the plain duty of the court to give
the plaintiffs in error a hearing upon their petition and
permission to enforce their claims. The application of
plaintiffs in error is the usual method adopted to the orderly enforcement of such rights. (17 Ency. Pl. & Pr.,
786, 791-3; Minot v. Mastin, 95 Fed., 739; Cohen v. Min.
Co., id., 583; Riggs v. Whitney, 15 Abb. Pr., 388;
Wheeler v. Walton, 64 Fed., 664; Winchester v. Davis
Co., 67 Fed., 45; Beach on Rec., 229; High on Rec., 39,
685.) The contract right of foreclosure of a mortgage

cannot be altered, burdened, suspended or stayed even by a statute subsequent to the contract. The essential qualities of the remedy contracted for are a part of the application of the contract itself. (Phinney v. Phinney, 81 Me., 450; Boice v. Boice, 27 Minn., 371; O'Brien v. Kreutz, 36 Minn., 136; Baldwin v. Flagg, 43 N. J. L., 495; Assn. v. Hardy, 86 Tex., 610.) And that which cannot be done by law directly cannot be done without law or against law by any court or board pretending to exercise the authority of law. (Com'rs v. Burns, 3 Wyo., 691.) The effect of the denial of the application of the plaintiff in error, bank, was to supercede the previous judgment of foreclosure against the lands and a suspension of the contract and statutory right of possession and foreclosure as to the personal property under the mortgages of plaintiffs in error where the right had not been legally questioned in any manner. Moreover, the effect of the order while denying the hearing was to proceed as though a hearing had been had adjudging the right in favor of the receiver and against the plaintiffs in error, not after but before an inquiry. This is not the kind of case in which the expenses of receivership are payable out of the property in his hands. The receiver acquired only such right as the judgment creditor had and his appointment did not affect or impair the rights of third parties or existing liens, and a sale by the receiver could not divest or impair such rights. (Beach on Rec., 8, 218, 639; Smith on Rec., 34, 68; High on Rec., 138, 302, 348-9, 424, 440, 495; 23 Ency. Law, 1084-92; Moran v. Sturgis, 154 U. S., 256; Kneeland v. L. & T. Co., 136 U. S., 379; Snow v. Winslow, 54 Ia., 200; Barren v. Mullen, 21 Minn., 374; Manning v. Monaghan, 23 N. Y., 539.)

With the exception of a class of cases affecting railroads, waterworks and other *quasi* public corporations, where upon grounds peculiar to that class of institutions, where the proper parties are before the court and upon suitable proceedings, the business of such corporations are operated

under a receiver for a limited time, the costs and expenses
of a receivership cannot in general be paid out of property or
a fund owned by a stranger to the suit or subject to a
prior lien in favor of persons who are not parties to the
litigation and for whose benefit a receiver has not been
asked. (Lammon v. Giles, 3 Wash., 117, 123; Bradford
v. Cooledge, 30 S. E., 579; Tome v. King, 64 Md., 166;
Howe v. Jones, 66 Ia., 156; St. Louis v. Light Co., 11
M. App., 237; Sneed v. Wagnaur, 27 Mo., 176; Hotch-
kiss v. Maskell, 87 Ill. App., 623; Iron Const. Co., 19
N. Y. App. Div., 415; Riggs v. Whitney, 15 Abb. Pr.,
388; Cooper v. Shirley, 75 Fed., 268; Hanna v. Tr. Co.,
70 Fed., 2; Assn. v. Alderson, 90 Fed., 142; Ephriam v.
Bank, 129 Cal., 589; Highly v. Dean, 168 Ill., 266; Joslyn
v. Athens Co., 43 Minn., 534; Moore v. Lincoln Park, 196
Pa. St., 519; Jones on Corp., 534; Sav. Bk. v. Cir. Judge,
98 Mich., 173; Wheeler v. Walton, 64 Fed., 664; Trust
Co. v. R. R. Co., 100 Fed., 899; Nat. Bk. v. Boyne, 140
N. Y., 321; Cutter v. Pollock (N. D.), 76 N. W., 235.)
The plaintiff or the party who sets the receivership in op-
eration must in such case respond for the receiver's costs
and expenses. (Howe v. Jones, 66 Ia., 156; Tome v.
King, 64 Md., 166; R. S., 3956.)

This controversy seems to have narrowed into a mere
question of costs and expenses of the receiver. The courts
never retain a receiver merely for his benefit, but here the
receiver seems to have assumed the entire burden of the
litigation.

It was error for the court to order the sale of some of
the cattle for the purpose of paying the expenses of the
receivership. Whether the court erred or not in appoint-
ing a receiver in the first place, it was not justified in pro-
ceeding in the matter of the sale except after a hearing
and a determination of the rights of the claimants. (Wind-
sor v. McVeigh, 93 U. S., 274; Collins v. Meyers, 68 Ga.,
530.) The judgment debtor has in fact nothing but an
equity of redemption in any of the property. The receiv-

er's appointment does not enhance the value of the property nor change the order of priority of the lienors. If the plaintiffs in error have the right to possession, they are entitled to obtain the same by replevin or otherwise. In this case the judgment creditor is not only depriving the plaintiffs in error of their remedies, but he is resorting to a remedy to which he is not entitled. (Congdon v. Lee, 3 Edw. Ch., 304; LeRoy v. Rogers, 3 Paige Ch., 334; Bank v. Cir. Judge, 43 Mich., 292; Min. Co. v. Min. Co., 106 Ala., 492; Furnace Co. v. Iron Co., 96 Ala., 472; Rodman v. Harney, 102 N. C., 1; Elwell v. Goodnow, 71 Minn., 383.)

*Herman V. S. Groesbeck,* for defendants in error. ·

The power to appoint a receiver vested in the District Court under Sections 4054, 3940-3956, R. S. The purpose of supplementary proceedings is to furnish a simple and inexpensive substitute for the equity proceedings in discovering and applying property of a debtor which cannot otherwise be reached. The creditor acquires a lien by such proceeding upon the equitable assets of the debtor, to perfect which he must obtain an order directing the property to be applied to the judgment, or the appointment of a receiver. The creditor first instituting such proceedings has preference. His rights will not be affected by an assignment of the property or a subsequent bankruptcy of the debtor. (24 Ency. Law (1st Ed.), 600, 614, 635, 656-7.) The validity of the receiver's appointment cannot be tested collaterally; the judgment debtor only can avail himself of any irregularity in the proceedings. Consenting to the appointment or failing to seasonably object thereto will constitute a waiver. (Id., 689, 690.) The receiver representing the debtor is also trustee for the benefit of the creditor upon whose application he has been appointed or for whom the receivership has been extended, but not for the benefit of all creditors. An order appointing a receiver of certain property of the judgment debtor is an adjudication that the same is not exempt and will be full protection to the receiver for acts done in conformity therewith while in

force. (21 Ency. Pl. & Pr., 181, 193.) The plaintiff in error cannot by intervention object to the receiver's appointment. (17 Ency. Pl. & Pr., 695, 697, 718, 721, 757, 785-7, 791-2; Greeley v. Sav. Bank (Mo.), 15 S. W., 429; Sands v. Greeley, 80 Fed., 195; Greenawalt v. Wilson, 52 Kan., 109; Gallagher v. Gingerich, 74 N. W., 763; Egbert v. Assn., 9 O. S. & Cp., 646; Kneeland v. Trust Co., 136 U. S., 89; Anderson v. Matthews, 8 Wyo., 513.)

The appointment of a receiver in supplementary proceedings as authorized by Section 3952, R. S., can mean nothing less than a receivership of *all* the property of the judgment debtor. The plaintiffs in error by their laches in the enforcement of their judgment and liens ought not to complain of the diligence of the judgment creditor in this case. The sole question in the case is whether or not the court had jurisdiction of the subject matter. It clearly had jurisdiction for the reasons above stated, and it was only necessary that the order should appoint a receiver of the property of the judgment debtor without designating particular property. (Ward v. Petrie, 157 N. Y., 301.) And thereupon the receiver was entitled to take into possession all of the debtor's property not exempt from execution. The fact that there may be pretended liens was examined by the court and it undoubtedly appeared that there was property in excess of the amount of the liens, if any. Lienors and judgment creditors have no right to forever hold their liens as a menace to other unsecured judgment creditors and thus prevent them from diligently enforcing their rights. Upon the matter of jurisdiction in cases like this, see Cameron v. Imp. Co., 21 Wash., 169, and note to Lathrop v. Clapp, 100 Am. Dec., 500, 512.

The plaintiffs in error waived any irregularity, if any, in the receiver's appointment by acquiescing therein when they asked permission of the court to enforce their securities. Their only contention then was as to the compensation to be allowed the receiver upon his application to sell certain personal property for the purpose of converting the

property and paying the expenses incident to the trust. They never objected to the receiver's appointment, and Mr. Crumrine, one of the plaintiffs in error, it appears, urged the appointment. The receiver obtained the order and sold the property some five days thereafter, before these proceedings in error were instituted. The laches of the plaintiffs in error is manifest throughout the entire case. (Bank v. Braithwaite, 7 N. D., 358.)

The claim is untenable that the appointment of the receiver was improper because the property could have been taken on execution. By the examination and receivership provided by law all the property could be reached. Moreover, it would have been impossible to have appraised the value of the property or to secure purchasers for it with the apparent mortgages and liens on record, and the court will not compel the doing of a vain thing. The order appealed from was not a final order. (R. S., 4247; Anderson v. Matthews, 8 Wyo., 307; 2 Ency. Pl. & Pr., 78.) The order for the sale of the property appealed from is merely interlocutory, not affecting the subsequent rights of the adverse parties. The property sold under the order was only claimed by the bank, and it has proceeded by replevin to protect its interests. There is, therefore, no necessity for the appeal. This is shown by affidavits filed on the motion in this court to stay proceedings.

In such a case as this the receiver is entitled to compensation and for the expense of preserving the property. (Trust Co. v. Coal Co. (Colo.), 60 Pac., 621; Merriam v. Min. Co. (Ore.), 60 Pac., 997; O'Donnell v. Bank, 9 Wyo., 408; Anderson v. Matthews, 8 Wyo., 513; Beckwith v. Carroll, 56 Ala., 12; Inv. Co. v. Portland (Ore.), 67 Pac., 194; Kneeland v. Trust Co., 136 U. S., 89; Ellis v. Ice Co., 86 Tex., 109; Hoffman v. Bank (N. D.), 61 N. W., 1031; Grant v. Ins. Co., 120 U. S., 271; Hembree v. Dawson, 18 Ore., 474; Greeley v. Bank (Mo.), 15 S. W., 429; Land Co. y. Bindle (Tex.), 32 S. W., 582; Iron ·Co. v. Blevins, 34 S. W., 828; Sands v. Greeley, 80 Fed.,

195; Trust Co. v. R. R. Co., 85 Fed., 390; Electric Co. v. Ry., &c., Co., 84 Fed., 740; Gallagher v. Gingerich, 74 N. W., 763; Gas Co. v. Foster, 99 Fed., 495; Davis v. Shearer (Wis.), 62 N. W., 1050; Jones v. Blum, 145 N. Y., 333; Smith v. Hopkins, 10 Wash., 77.) It is only when a party improperly seeks the appointment of a receiver that he should be required to pay the expenses of the receivership. (Myers v. Frankenthal, 55 Ill. App., 390; Highley v. Deane, 64 id., 389; Cake v. Mohun, 164 U. S., 311.)

ON PETITION FOR REHEARING. There does not appear to be in the record any application in writing by which the plaintiffs in error sought to enforce their liens; this is a fatal omission. The sale of the cattle under the order was not for the purpose of carrying on the business of the partnership, but to create a fund for the payment of the expenses of administering the trust, there being no funds of the partnership in the hands of the receiver. The entire object of the receivership was to settle the affairs and concerns of an insolvent co-partnership, and this would have been done speedily and economically if the receiver had not been interfered with. The property should have been sold, all just liens satisfied, and the entire matter settled by one simple, direct and speedy proceeding, without encumbering the estate with the expenses of foreclosure proceedings in three or four different actions. If the plaintiffs in error had pursued their remedies long before the appointment of a receiver there would have been no trouble. A receiver is the same whether he acts upon the application of a creditor in an action where all other creditors are parties, or in supplementary proceedings. He becomes a trustee, not only for the creditor making the application, but of other creditors and stockholders. (Gillett v. Moody, 3 N. Y., 479; Talmadge v. Pell, 7 N. Y., 347; Davis v. Gray, 16 Wall., 203.) A court appointing a receiver acquires certain rights and assumes certain obligations, and the expenses which the court creates in the discharge of those obligations are burdens on the property taken pos-

session of, irrespective of the question who may be the ultimate owner, or who may have the preferred lien, or who may invoke the receivership. (Kneeland v. Trust Co., 136 U. S., 89; Ry. Co. v. Bledso (Tex.), 20 S. W., 1135.) The receivership in this case is somewhat analogous to that of a receivership of railway corporations and mining companies, where the business may be and ought to be carried on for a limited period in order to protect the interests of all concerned. No hazards of a mercantile business are incurred or contemplated. The court has the power to make the expenses of the receiver chargeable on the property in his hands, though the right should be exercised with caution. (Gillan v. Nussbaum, 95 Ill. App., 277.) Although, generally, a court of equity cannot without the consent of all lien creditors authorize the receiver of an insolvent private corporation whose business is not affected with any public interests to issue certificates which will be a paramount lien on the property for the purpose of carrying on the business of the corporation, yet it will be done when it is necessary to preserve the property or franchises. (Ins. Co. v. Iron Co., 68 Fed., 623.) A receiver may for good cause shown be permitted to continue a partnership business until a sale of the property or the end of the litigation. (23 Ency. Law (2d Ed.), 1019, 1119.) The compensation of the receiver, however appointed or for what purpose, should be allowed where it is necessary to conduct the business in order to avoid loss or depreciation of the property during receivership. Such compensation allowed should not be narrowed to what it would have cost the judgment debtor, as the lienors have been guilty of laches and neglect in not promptly enforcing their claims. The compensation is discretionary with the court. (Stuart v. Boulware, 133 U. S., 78; Mann v. Poole (S. C.), 26 S. E., 229; Iron Co. v. Blevins, 34 S. W., 828; Land Co. v. Bindle, 32 S. W., 582; Reinhart v. Min. Co., 94 Fed., 901.)

The matter of granting or refusing leave to enforce liens is addressed to the discretion of the court; and such dis-

cretion is not subject to review unless it has been abused.
The court ordered the receiver to report as to the validity
and justice of the claims, and if he reported adversely then
they were allowed to bring actions against the receiver.
This was not a final order that was prejudicial to the plain-
tiffs in error because they should have awaited the receiv-
er's report, and there has been no ruling adverse to them
upon their liens, but merely a reference to the proper party
as a master to ascertain their apparent justice and validity,
whereupon the matter could be reviewed by the court.  The
court followed the usual practice in such cases.  (Wiswall
v. Sampson, 14 How., 52; 17 Ency. Pl. & Pr., 785; Mor-
rill v. Noyes, 56 Me., 458; People v. Life Ins. Co., 79 N.
Y., 267; Att. Gen. v. Ins. Co., 4 Paige, 224; McRae v.
Dredging Co., 86 Fed., 344; In re Mackwirth, 15 App.
Div., 65; Wheeler v. Walton Co., 65 Fed., 720; Meeker v.
Sprague, 5 Wash., 242; Preston v. Laughran, 58 Hun,
216; 23 Ency. Law (2d Ed.), 1093; Barton v. Barbour,
104 U. S., 126; R. R. Co. v. Cox, 145 U. S., 593; Porter
v. Sabin, 149 U. S., 473; Andrews v. Iron Co., 7 N. P.
(Ohio), 237; State v. Scott, 82 N. W., 320; 60 Neb., 98;
Hyndman v. Field, 101 Ky., 147; 22 Ency. Law, 1093-4;
Sands v. Greeley, 80 Fed., 195.)  The order being discre-
tionary, appeal will not lie.  (2 Ency. Pl. & Pr., 78-80, 89.)

Proceedings for appointment of the receiver were taken
on January 5, 1903, and possession was taken on January
7th; the order for the sale was made about January 22d,
and the order of the commissioner granting leave to enforce
securities was made on the 24th.  This delay was unrea-
sonable, and should be held tantamount to the consent and
acquiescence in the appointment.  (Brown v. Iron Co., 134
U. S., 535; Allen v. R. R. Co., 3 Woods, 316; Gypsum
Co. v. Adsit, 105 Mich., 497; Rumsey v. R. R. Co., 154
Mo., 215; In re Purifier Co., 86 Mich., 149; Hardt v.
Levy, 79 Hun, 348.)

Upon the whole case we think the court has misconceived
the scope of this salutary statute, which is remedial in char-

acter and which has been properly invoked in this action by a diligent creditor. The point that the court or Judge is not authorized to settle disputes between the debtor and third persons applies merely where the Judge may order property or earnings of the debtor to be applied on execution without the appointment of a receiver and where the debtor has confessed upon his examination that he owns such property. We cannot see that it has any bearing upon the administration of a receivership.

CORN, CHIEF JUSTICE.

M. E. Stowers, one of the defendants in error, obtained a judgment, in the District Court of Albany County, against the firm of Bird Bros. for the sum of $1,186 and $9.50 costs. An execution was returned wholly unsatisfied and, upon the motion of the judgment creditor, Thomas Bird, the managing partner was ordered to appear and answer concerning the property of the firm, as provided by the statute in regard to proceedings in aid of execution. Upon his answer, the court appointed the defendant in error, Alfred Cook, who was then and is now Sheriff of the county, a receiver of the property of the judgment debtor, and he proceeded to take into his possession and control some fifty thousand dollars' worth of property, consisting of 4,437 acres of land, 341 tons of hay, 31 head of horses, 669 head of cattle and a large amount of ranch machinery and implements. It is alleged that all the property is covered by mortgages and other liens to its full value and is insufficient to pay the indebtedness secured upon it. And this seems to be conceded by the judgment creditor, but he insists that the liens, or some part of them, are fraudulent. The receiver reported that he was without funds and, upon his application, the court made an order authorizing him to sell fifty head of fat cattle at private sale, in order, as stated in his application, "to create a fund for the maintenance and care of the said property, the marshaling of assets and liabilities thereof, for the payment of services of custodians and conservators employed by him

wherever necessary, to secure abstracts of title and report on all existing liens on the same."

The lienors, the plaintiffs in error here, were not made parties to this action and, so far as we can discover from the record, received no notice from the judgment creditor, or the receiver, of these proceedings. They, however, intervened by petitions setting up their claims, alleging that the property was insufficient to pay them, and praying for leave to enforce their liens and that the receiver be ordered to turn over possession of the property to them for that purpose. These applications were denied by the court and the matter of their liens referred to the receiver with directions to examine into them and report his recommendations to the court. The lienors filed their petitions in error in this court, asking at the same time for a stay of execution, which was granted, an undertaking for the purpose being filed as required. They also made application for a writ of prohibition restraining the District Court from further proceedings with reference to the encumbered property. An alternative writ was also allowed, and the matter was submitted and is now pending before this court upon a demurrer to the petition. In the meantime, the receiver had disposed of the fifty head of cattle at private sale for the agreed price of $1,125, the real value as alleged being not less than $1,750.

It is apparent that the proceedings in this case were instituted under the provisions of Chapter 2, Division 3, of Title 7, of our statutes, entitled, "Proceedings in Aid of Execution." And the substantial question presented upon this record is whether it is competent for the court to take under its control the property and business of the partnership of Bird Bros. and administer and conduct the same by its receiver, as has been attempted in this case.

In the case of railroads, and like properties, courts of chancery exercise jurisdiction to continue the operation of the business, and mortgage and other liens are often subordinated to the charges and expenses of the receiver-

ship. But this is upon the specific ground that the public interest and convenience require that the business should be continued, and the reason does not apply to the property of individuals and to merely private enterprises, charged with no such duty to the public. In High on Receivers, Section 480 (3d Ed.), the author says: "It is important to bear in mind, in considering the subject of receivers in partnership cases, that it is not the province of a court of equity to conduct the business of a co-partnership, and while a receiver may be directed to continue the business a sufficient length of time to enable the court to determine the rights of the parties litigant, it is not the province of the court to become the superintendent and manager of the private business of parties." And in Allen v. Hawley, 6 Fla., 164, in which the authorities upon the subject were considered in some detail, the court say: "As it is not the province of the court to create a partnership, so it is equally foreign from its functions to conduct its business. It never could have been contemplated that a court of chancery should become the superintendent of the private affairs of individuals. Its legitimate province is to adjust the rights and settle the disagreements of parties growing out of such transactions." Cases have arisen where the business of a partnership has been continued temporarily pending litigation with reference to the rights of the parties, but only for special reasons such as the preservation of the good will, so that its full value may be realized by the partners at a final sale and to prevent great loss to the parties. (High Receivers, Sec. 481.)

It is equally well settled that, except in the special cases and for the special reasons above referred to, mortgage, and other liens, cannot be subordinated to the charges and expenses of the receivership. Generally the receiver takes the property of the debtor subject to all liens attaching thereto at the time of the appointment. (Smith Receiv., Sec. 68.) As stated in the case of Hotchkiss v. Makeel, 87 Ill. App., 628: "The power to subordinate the lien of a

mortgage to the charges of a receiver has been frequently exercised by equity courts in recent years, in the case of mortgages of railroads, and other properties impressed with a public duty, and in one case (Beckwith v. Carroll, 56 Ala., 12), and probably in other analogous cases where growing crops were involved, the receiver was considered to have created the very property over which the receivership extended.

"But, wherever exercised, it has been because of the peculiar character of the property. A mortgage is a contract obligation, and is as sacred as any other contract; and anything that destroys or impairs its lien destroys or impairs a contract.

"The reason that supports the excepted cases of railroads and some other business properties is that, they being charged with a duty to the public that is superior to any private obligations, the mortgage owner has knowledge when he invests that his security is liable to be displaced in favor of that first obligation. In no well considered case that we know of has the power been exercised to the subversion of the right of a prior mortgagee of purely private property, unless for very peculiar reasons."

Even in the case of railroads, the power is exceptional, and the Supreme Court of the United States say upon the subject: "Upon these facts we remark, first, that the appointment of a receiver vests in the court no absolute control over the property, and no general authority to displace vested contract liens. Because in a few specified and limited cases this court has declared that unsecured claims were entitled to priority over mortgage debts, an idea seems to have obtained that a court appointing a receiver acquires power to give such preference to any general and unsecured claims." And they add: "It is the exception and not the rule that such priority of liens can be displaced. We emphasize this fact of the sacredness of contract liens, for the reason that there seems to be growing an idea that the chancellor, in the exercise of his equitable powers, has un-

limited discretion in this matter of the displacement of vested liens." (Kneeland v. American Loan Co., 136 U. S., 97; International Trust Co. v. United Coal Co., 60 Pac. (Colo.), 621; Merriam v. Victor Min. Co., 60 Pac. (Ore.), 997.)

These principles, applied to receiverships generally, are specially applicable to receiverships under our statute with reference to proceedings in aid of execution. From the very nature of the proceedings, the scope of the receivership is very narrow. In this case the suit in which the appointment is made was brought for the recovery of money due from the defendant to the plaintiff upon a promissory note and for no other purpose whatever. None of the grounds upon which the interference of courts of equity by the appointment of a receiver is based are stated, or attempted to be stated, and the mortgagees and other lienors are not made parties. The statute, under and by virtue of which the appointment is made, provides a summary method of discovering property subject to the plaintiff's execution and applying it to that purpose when discovered. No other purpose or object is discoverable in its terms, and the taking over and conducting of the defendant's business, the marshaling of liens and the settlement of disputed titles are foreign to the proceedings. As said by the Supreme Court of Ohio, from which state our statute is taken: "In this summary proceeding, disputes between the debtor and third persons cannot be settled, nor can the collection of claims be enforced by an order of payment and attachment. When there are such claims to be collected, the appointment of a receiver is the proper course, who, if payment be not made, will resort to the proper remedies." (Edgarton v. Hanna, 11 O. St., 324.)

While the statutes of the various states providing for such proceedings differ in their details, certain general principles applying to the appointment and powers of receivers, in such cases, are well settled. As already mentioned, existing liens are not displaced or affected by the

appointment. And when property of the judgment debtor is in the hands of a third person, under a valid transfer, or where the debtor has placed on such property a *bona fide* lien or incumbrance, the receiver's possession is subject thereto, or in other words, as to such property the receiver succeeds to such rights only in such property as the judgment debtor had at the time of his appointment. (Smith Receivers, 154.) It is a summary proceeding and disputes between the debtor and third persons cannot be settled, nor can the collection of claims be enforced by an order of payment and attachment. The receiver must resort to his appropriate action for the purpose. (Schloredt v. Boyden, 9 Wyo., 392; Edgarton v. Hanna, 11 O. St., 323; High Rec. (3d Ed.), 457.) Of similar provisions in Indiana that court say: "They institute a summary mode of ascertaining what property a judgment defendant may have in his possession, or under his control, or in the possession of others, subject to execution, and also the debts, if any, that may be owing to him. These are the only subjects of inquiry. No authority is given for making third persons defendants for any other purpose than to answer as to any property held by them belonging to the judgment defendant, or as to their indebtedness to him. The court or Judge has no power, in this form of procedure, to adjudicate and settle controverted questions of right between the judgment debtors and third parties, nor to set aside a sale or conveyance of property by the debtor on the alleged ground of fraud. Such questions must be tried in another form of action." (Burt v. Hoetinger, 28 Ind., 218.) In so far as an order seeks to determine conflicting claims of title, or to require the delivery of property adversely held, or to authorize the receiver or other officer to take possession of it, it is beyond the jurisdiction of the court and void, and a writ of prohibition may issue to prevent action being taken under it. (Freeman Ex., Sec. 418; McDowell v. Bell., 86 Cal., 615.)

In view of these principles, we think it is clear that the court has in some of its orders exceeded its authority.

But the plaintiffs in error, while not formally assigning it as error, make some slight contention that the appointment of the receiver in the first place was improper and erroneous. We think, however, that so far as the appointment is concerned, the plaintiffs in error are not in position to complain. The statute authorizes the appointment, they were not parties to the suit or to the supplemental proceedings, and it is a matter in which they have no interest or concern. For the same reason the suggestion of defendant in error that Crumrine, one of the plaintiffs in error, is estopped from objecting to the possession and control of the property by the receiver from the fact that he consented to the appointment, is without force. He testifies that while he consented to the appointment he did not understand that the receiver was to take his property. And we think it was a matter which concerned only the parties to the original action and with which the plaintiffs in error had nothing whatever to do. (Tyler v. Willis, 33 Barb., 331; Underwood v. Sutcliffe, 10 Hun., 456; 24 A. & E. Ency., 689.) But in so far as the court has undertaken to conduct the business of the defendant partnership, as in the case of a railroad or other business charged with a public duty, its action was erroneous. The powers and functions of the receiver are limited by the purposes of the statute under which he was appointed; that is, to demand and sue for, under the order of the court, and to take into his possession money, property and interests of the judgment debtor and apply them to the satisfaction of the judgment.

The receiver, by his appointment, succeeded only to the title of the judgment debtor and as to property encumbered by liens he has only such rights as the judgment debtor had at the time of the appointment. (Smith Rec'vrs., 267; Voorhees v. Seymour, 26 Barb., 583; Gardiner v. Smith, 29 Barb., 74.) In this proceeding the court has no authority to order property to be applied to the satisfaction of the judgment unless the title of the defendant thereto

is clear and undisputed. The question has generally arisen upon the answer of a garnishee who claimed to be the owner of, or to have some interest in, the property sought to be applied, and it has, we think, been uniformly held under statutes like ours that the disputed claims cannot be adjudicated in this summary proceeding. (41 N. J. L., 269; Bostwick v. Monck, 40 N. Y., 383; Rice v. Whitney, 12 O. St., 360; 21 Ency. Pl. & Pr., 139.) The person claiming an interest has the right to have the issue tried in the regular, ordinary way, rather than by a summary proceeding, and to have the protection of a trial by jury in cases where the right to a jury trial is secured. Doubtless, as said in Freeman on Executions, "It is competent for the Legislature to provide for all this in the original action, and to authorize issues to be formed therein and submitted on allegations, express or implied, to the jury, and a final judgment to be entered on their verdict." (Freeman Ex., p. 2230.) But our statute makes no such provision, and that it confers no such jurisdiction has been uniformly held by the courts of Ohio, where it originated. In some of the states the powers and duties of the receiver are pointed out somewhat in detail. But the provision in this State is limited to the bare statement that "the Judge may, by order, appoint the Sheriff of the proper county, or other suitable person, a receiver of the property of the judgment debtor" and directions as to his oath and bond. Doubtless the receiver, under the general statute regulating the subject of receivers, has power to do whatever the court or Judge has authority, in this proceeding, to direct. But the authority of the court or Judge is very limited, being confined to carrying out the purposes of the statute by the methods which it provides.

These conclusions are emphasized by the fact that every step in the proceedings may be taken before a Judge and the action of the court is not necessary with perhaps a single exception. Where real estate of the judgment debtor, or his interest therein, is sold by the receiver, the approval

of the proceedings of sale must be by the *court* in which the judgment was rendered. And even this is only an apparent exception, as the approval is not one of the steps in the special proceeding.

We are further of the opinion that the order of the court directing the sale of cattle, or other property, covered by the liens of the plaintiffs in error, for the purpose of appropriating the proceeds to the payment of the costs of the proceedings, the conservation of the property in the hands of the receiver and other expenses of the receivership and the compensation of the receiver, cannot be sustained. It may be fully conceded that where it becomes necessary to appoint a receiver to preserve property from being wasted, or in any way lost or destroyed, that such receivership being for the benefit of all persons having an interest in such property, they ought all to contribute to the expenses of the receivership and, as a consequence, that the property itself will be made to pay such expenses. But we think it is not the law nor the practice of the courts that merely because property happens to pass into the hands of a receiver it therefore becomes liable for the expenses of the receivership, in all cases and without regard to the ownership. "If for any reason the order of the appointment is improperly made and is accordingly set aside, it seems unfair to charge the property with the receiver's fees, and, according to the better opinion, the plaintiff himself will be required to pay them." (20 A. & E. Ency., 181.) In French v. Gifford, 31 Ia., 431, the court say: "We think it would be an unjust and inequitable rule if in all cases the receiver should be entitled to his compensation from the fund in his hands without reference to the legality of his appointment. Under the operation of such a rule innocent persons might be made to suffer great loss." And under the circumstances of that case the court charged one-third of the compensation of the receiver to the fund in his hands and two-thirds against the plaintiff in the action. In Highley v. Deane, 168 Ill., 272, the court say: "Where

the receivership is procured under the assertion of an unjust and wrongful claim, as finally found by the court, and the receiver is authorized to take possession of the property of another on such wrongful assertion, the court can protect the injured party by returning the property of which he was divested without its being diminished to pay receiver's charges." In a New York case the order appointing the receiver was reversed on appeal and he was directed to turn over to the defendant all the copartnership property which he held and the plaintiffs were ordered to pay the receiver's compensation. The receiver claimed to have incurred liabilities in the discharge of his trust greater than the amount he had received and urged that he ought not to be compelled to turn his receipts over to the successful party to the litigation and look to the other (who might be irresponsible) for his fees and expenses.

But the court held that so far as the defendant was concerned the appointment was an unauthorized one and not made for his benefit in any manner; it was an invasion of his rights, for which there was no law requiring him or his property to pay the expense; that the same principle would charge property with the fees of officers where it may have been replevied or taken under attachment, and that the same rule would restrain the discharge of a person in custody under an order of arrest until the fees of the officer should be paid. And the court say the law cannot sanction the taking of one man's property in this manner and subjecting it to the expenses or obligations of another. (Weston v. Watts, 45 Hun, 219.) And the courts almost uniformly hold in the case of intervenors that, where the receivership is not requested by them and they obtain no benefit from it, they or their property are not liable for any of the costs or expenses. (Howe v. Jones, 66 Ia., 162; High Rec'vrs., 796, 809; City of St. Louis v. St. Louis Gas Light Co., 11 Mo. App., 241; Matter of Atlas Iron Co., 19 App. Div. (N. Y.), 417; Lammon v. Giles, 3 Wash. Ty., 123.)

The decisions of the courts upon the question have usually been in cases where it has been subsequently determined that the receiver ought not to have been appointed. But where the court ordered certain property to be turned over to the receiver and it was subsequently decided that the receiver had no right to its possession, the New York Court of Appeals say that it was the same in regard to that property as if the receiver ought not to have been appointed and that the fund must be returned undiminished by the receiver's charges. (P. N. Bank v. Bayne, 140 N. Y., 321.)

These principles apply with even greater force to the case under consideration. The plaintiffs in error were not parties to the action; they have never in any way consented to the custody of the receiver, but have protested against it at all times; there was no order of the court directing the receiver to take charge of this particular property, but the only order made, and the only one authorized by the statute, was one appointing him receiver of the property of the defendants in the action. And, furthermore, it is claimed that the entire beneficial interest in the property is in the plaintiffs in error, and this is apparently conceded unless it can be established that the claims, or some part thereof, are fraudulent. The burden of showing such fraud is upon the creditor, the plaintiff in the action, and any steps to establish it should be taken by the receiver appointed at his instance. No such steps have been taken, but instead the claims were referred by the court to the receiver to examine and report his recommendations, it being, as it seems, the purpose of the court to adjudicate the validity of the liens in this proceeding.

As already seen, the court has no jurisdiction in this proceeding to adjudicate these matters. And, as it is the province of the receiver to institute any actions or proceedings, which may be appropriate or desired by the creditor, to test the validity of the liens, it is clear that he, a necessary party to such proceedings, was not a proper person to be appointed referee, even if it had been competent for the court to make any reference of them in this proceeding.

Furthermore, it appears from the record that suit had been instituted and a decree entered foreclosing the real estate mortgage, though there had been no sale under such decree; that the indebtedness secured by the chattel mortgages was over due and the conditions were forfeited by non-payment. Under these circumstances, there was nothing to vest in the receiver but the bare possession and a right of redemption. He succeeded only to such rights as the debtor had at the time of the appointment. (Voorhees v. Seymour, 26 Barb., 583; Gardiner v. Smith, 29 Barb., 74.) As the chattel mortgages contained the customary provision authorizing the mortgagees to take possession whenever they deemed the security unsafe, it is doubtful if the mortgagor had any such right of possession as authorized the receiver to take the personal property at all. (Griswold v. Tompkins, 7 Daly (N. Y.), 215; Gardiner v. Smith, *supra.*)

But however this may be, the appointment of the receiver did not affect the liens and the holders have the same right to pursue any method of realizing their claims out of the property upon which they are secured as if no receiver had been appointed, and the court should have required him to turn over the property to the lien creditors for that purpose. Whatever right of possession the receiver may have had at the time of his appointment, it was subordinate to the right of the lienors to take possession whenever the provisions in their conveyances, conferring the right, became operative. (Bowling v. Garrett, 49 Kan., 504; Righton v. Pruden, 73 N. C., 61; M. & M. Bank v. Kent, 43 Mich., 297.) There could be no possible reason for the court to hold this property in its custody and suspend the right of the lienors to foreclose in the ordinary way except to enable satisfaction of these with other demands to be made in their proper order, through the receivership. (Wheaton v. Spooner, 52 Minn., 423.) But, as already pointed out, the court had no jurisdiction to control or enforce or pass upon the liens in this proceeding. Though we have no doubt of

the power and authority of the court to enjoin the defendant and the lienors from disposing of the property in any way to the detriment of the judgment creditor except by the enforcement of their liens and to require the lienors to pay into court or to the receiver, to be applied upon the execution of the plaintiff, or to the payment of costs and the expenses of the receivership, any residue of the proceeds after the satisfaction of the liens.

The judgment and orders of the court in so far as they have denied to plaintiffs in error the right to enforce their liens in the ordinary way, and the possession of the property for the purpose, and have directed the sale of portions of the encumbered property for the purpose of obtaining funds to carry on the business of Bird Bros. and to pay the expenses of the receivership, or other costs in the case, must be reversed. Portions of the property have been sold by consent of the parties in interest pending the litigation, such property being in its nature perishable, and the sale being deemed necessary to the conservation of the estate and the proceeds are, as we understand, in the custody of the court. Such sales must be approved and the proceeds disposed of in conformity with the views expressed in this opinion, subject to any stipulations of the parties in interest under which such sales may have been made. Certain expenses have also been incurred by the receiver, under the orders of this court, for cutting and putting up hay on the ranches, and the like, and such necessary expenses are to be paid out of the property and taxed against the parties or persons benefited thereby.

It will be necessary for the District Court to settle the accounts of the receiver, and if, in such settlement, it appears generally that expenses have been incurred or services performed by the receiver in the care or disposition of the encumbered property, and that such expenses or services have been to the benefit of the lienors and the amount does not exceed what it would have been necessary for them, or the mortgagor, to pay for the like purposes,

the encumbered property ought to pay, or contribute its just share to, such amount.

The judgment is reversed and the case remanded for further proceedings not in conflict with this opinion.

*Reversed and remanded.*

KNIGHT, J., and POTTER, J., concur.

### ON PETITION FOR REHEARING.

POTTER, JUSTICE.

In this case both parties have filed petitions for a rehearing. The defendants in error seek a rehearing upon all the points generally involved in the cause, while the plaintiffs in error ask for a rehearing upon certain points only in reference to the expenses of the receiver. We will consider first the petition of the defendants in error.

At the outset it is suggested in the brief of counsel for the defendants in error that there does not appear in the record any application in writing upon which the plaintiffs in error sought to enforce their liens, and that this omission was overlooked in the argument at the former hearing. This is a mistake of counsel and not of the record, since the bill of exceptions contains the written applications. Counsel persists in misconceiving the nature, object and force of this proceeding, and seems to understand that it is an action for the purpose of winding up the affairs of an insolvent partnership. He states in his brief in support of the petition for rehearing that "the entire object of the receivership was to settle the affairs and concerns of an insolvent co-partnership, and this would have been done speedily and economically long before this time if the receiver had not been interfered with. The property should have been sold, all just liens satisfied, and the entire matter settled in one simple, direct and speedy proceeding without encumbering the estate of the insolvent co-partnership with the expense of foreclosure proceedings in three or four different actions and proceedings, which even the plaintiffs in

error have been very dilatory, and, in short, negligent in pursuing." Counsel evidently observes no impropriety in the employment of a purely statutory proceeding in aid of an execution, which may be prosecuted before and determined by a District Judge in vacation or chambers, and whose orders therein need not necessarily be court orders, for the equitable closing up of the business of a co-partnership judgment debtor, marshaling its varied assets, determining the rights, interests and priorities of all its creditors, and adjudicating the claims and liens of third persons upon real estate; and all this in a proceeding where by all the authorities other creditors and claimants to the property of the judgment debtor are neither necessary nor proper parties, and where the only notice ever given to the firm in question was a notice to an alleged resident and managing partner to appear and answer touching the property of the firm. No petition was filed against the firm alleging insolvency or any other reason for winding up its affairs at the instance of a single creditor. Nor do we find any process bringing the partnership and its creditors into court for any such purpose. This erroneous conception of the proceeding, and the functions and powers of the receiver, constitutes the fundamental error in the case. This is in no proper sense a suit or proceeding for winding up the business and affairs of an insolvent partnership. (Price v. Price, 21 App. Div. (N. Y.), 597.) Had it been such a proceeding, brought in a court with ample jurisdiction and with power to bring in all interested parties, possibly the entire matter might have been settled speedily and without much controversy.

On the contrary, this is a proceeding instituted by a judgment creditor, after the issuance and return of an execution, for the purpose of requiring the judgment debtor to submit to an examination concerning his property and thereby subjecting to the satisfaction of the judgment, property not ordinarily reached by execution. The proceeding is authorized by Section 3941, Revised Statutes,

1899, and is regulated in some respects by the succeeding sections, and is entirely statutory. It is not a novel proceeding, as similar statutory provisions are to be found in many, if not all, of the code states. In principle, the statutes of the various states are quite similar. The orders authorized to be made are prescribed in the statute. Section 3951 provides that the Judge may order any property of the judgment debtor or money due him, not exempt by law, in the hands of either himself or other person, or of a corporation, to be applied toward the satisfaction of a judgment, and Section 3952 provides that the Judge may, by order, appoint the Sheriff of the proper county, or other suitable person, a receiver of the property of the judgment debtor, and may also, by order, forbid a transfer or other disposition of, or any interference with, the property of the judgment debtor, not exempt by law.

An important provision as partially indicating the scope of this proceeding is to be found in Section 3954, viz: "If it appear that the judgment debtor has an interest in real estate in the county in which proceedings are had, as mortgagor, mortgagee, or otherwise, and his interest can be ascertained as between himself and the person holding the legal estate, or the person having a lien on or interest in the same, *without controversy as to the interest of such person holding such legal estate, or interest therein, or lien on the same,* the receiver may be ordered to sell and convey such real estate, or the interest of the debtor therein." This section seems to clearly recognize the impossibility, in such a proceeding without recourse to other actions of determining conflicting or disputed claims or liens of third persons, upon the property sought to be subjected to the judgment.

But before proceeding further in the discussion of the question it will be well to briefly rehearse the material facts as they appear by the record.

The defendant in error, Morris E. Stowers, recovered a judgment for $1,186 and costs against Thomas Bird,

William J. Bird and Julia A. Bird, co-partners, doing business under the firm name of Bird Bros., on October 23, 1901, in an action brought in the District Court in and for the County of Albany by the said Stowers against the said firm and the individual members thereof, for the sum of $1,186 and costs. The said Stowers, by his attorney, on November 23, 1902, presented his motion in that action, supported by an affidavit, asking that an order be entered requiring Thomas Bird, the resident and managing co-partner, to answer concerning the concerns of said partnership and all the property thereof, under oath, and that, upon his answer, a receiver be appointed to take charge of all the property of the co-partnership. The said motion was based upon an affidavit of the attorney for plaintiff Stowers to the effect that the judgment, which had been recovered against Bird Bros., remained unsatisfied, that an execution had been issued and returned wholly unsatisfied, and that said Thomas Bird had property which he unjustly refused to apply to the satisfaction of the judgment, and that from the records in the office of the County Clerk of the county and the records of the court, and other sources, it was impossible to determine what property the firm of Bird Bros. had subject to execution in the County of Albany or elsewhere; but that the affiant was informed and believed that they had a large amount of property in their hands subject to execution, which should be applied to the satisfaction of the judgment.

Thereupon an order was made by the District Judge requiring Thomas Bird to appear at a time therein stated and answer fully, under oath, concerning the property and affairs of the firm. Thereafter it appears that the said Thomas Bird was examined in court and an order was entered reciting, "it appearing from such examination and the evidence adduced therein that a receiver should be appointed of the property of the said judgment debtors," and directing that the Sheriff of Albany County be appointed a receiver of all the property of the said co-partnership

and the individual members thereof, and enjoining any transfer or disposition of, or any interference with the property of the said firm, not exempt by law, on the part of the said co-partnership or any member thereof.

It appears that thereupon Alfred Cook, the Sheriff of Albany County, took into his possession a large amount of real estate and personal property, consisting of cattle, horses, hay, ranch machinery and implements. Shortly thereafter the said receiver filed a petition asking for an order of court permitting him to sell at private sale fifty head of fat cattle belonging to the said partnership "for the purpose of securing funds to administer his said trust as such receiver, there being no funds or money of said co-partnership that can be discovered by your petitioner after diligent search and due inquiry," and the same request is made in the first report of said receiver showing the property that he had taken into his possession. The reasons for that request, as stated in said report, are as follows: "In order that I may properly care for and maintain said property, secure abstracts of title and report on all existing liens on same," and "in order to create a fund for the maintenance and care of said property, the marshaling of assets and liabilities thereof, for payment of services of custodians and conservators employed by me wherever necessary, there being no funds at hand at the present time to pay expenses."

The order for the appointment of the receiver was entered January 5, 1903. The application of the receiver, above mentioned, to sell a portion of the personal property, was filed January 22, 1903, and the same day an order was made by the District Court Commissioner granting the request for a sale, but said order was on January 24, 1903, modified by the commissioner, so as to permit the receiver to sell only such cattle as were not encumbered by any of the liens held by any of the plaintiffs in error herein.

On the 22d day of January, 1903, the First National Bank of Laramie filed in said cause, and presented to the

said District Court Commissioner, a petition setting forth that to secure an indebtedness to said bank, it held a chattel mortgage upon a large number of the cattle, describing them, that had been executed May 26, 1898, by the firm of Bird Bros. and the individual members thereof, and also a second chattel mortgage, executed July 18, 1900, by the same parties, all securing an indebtedness then amounting to the sum of $19,065.56, and that said bank had theretofore been the owner of certain liens upon some of the lands of said firm, as shown by mortgages and other conveyances, and that such liens had been established by a decree of said court on July 28, 1900, and that one Constantine P. Arnold was thereby adjudged a prior lien upon said land, and that in and by said decree the Riverside Live Stock Company was adjudged to have a prior lien upon said land to secure an amount therein stated. The petition of said bank prayed that an order be made permitting it to take possession of the property covered by its chattel mortgage and to sell the same thereunder, and that it and the other said lienors might enforce their liens and claims in any and all lawful ways, notwithstanding the appointment of said receiver.

On the same or the following day similar petitions were filed by James P. Van Buskirk and Eli Crumrine praying permission to enforce their respective liens upon the property of the firm of Bird Bros., which was then in the possession of the receiver. Van Buskirk claimed to hold a mortgage upon a portion of the land of the firm, executed July 16, 1895, and a chattel mortgage upon some personal property, consisting generally of ranch implements, tools and machinery. The said Crumrine claimed a lien upon certain cattle under a chattel mortgage executed September 21, 1898, by the said firm to secure the sum of $2,200.

The receiver objected in writing to the granting of the applications of said lienors on several grounds. It will not be necessary to mention them all. But he set up that he had ascertained that there were other judgment lienors

who had not been notified of the proceeding, and that their rights would be imperiled by the granting of such application; that the judgment of the plaintiff Stowers was superior to any lien of the bank or of the Riverside Live Stock Company, for the reason that no execution or order to sell had been issued upon their said judgment; and that until all of the liens shall have been marshaled by the court and their priorities determined, the applications to enforce securities could not be considered by the court; that the cost of conserving the property under the receivership will not exceed the cost of preserving the same in the hands of the partnership, and that the property could not then be sold advantageously, but could be disposed of more advantageously in the summer months for the benefit of all the creditors of the co-partnership; that if the application should be granted, the receiver would be ousted from his possession and there would be confusion and complications in the marshaling of the assets and liens of the partnership; that by continuing the receivership, under proper orders, the rights of all the creditors of the firm can be determined according to their priorities, and that all the property can be sold and disposed of in proper time, the money paid into court and distributed to the creditors according to their priorities, when said liens are marshaled by court.

Replies were filed to these objections. The matter was examined by the District Court Commissioner, who ordered that the applicants be permitted to enforce their liens. The order of the commissioner was brought before the court for consideration. A written application was filed for a hearing and determination by the court on the petitions that had been filed asking permission to enforce securities by each of the plaintiffs in error, and thereupon the District Court made and entered the order here complained of.

That order directed the Sheriff, as receiver, to sell as many head of cattle, not to exceed fifty head, as should

be necessary to care for and conserve the partnership property, and disapproved, annulled and set aside the order of the commissioner permitting the plaintiffs in error to enforce their claims and securities; and the receiver was directed to look into the validity and justness of said claims and securities and make his recommendations thereon, on or before thirty days, and permission was given to said lienors and each of them to proceed, subsequent to said time, to establish the liens and claims by action against the receiver if they were reported adversely. The court expressly denied the applications of the plaintiffs in error and each of them for leave to enforce their securities and liens independent of the receivership.

The facts above recited clearly illustrate the theory upon which counsel for Stowers was proceeding after the appointment of the receiver, as well as the theory adopted by the court in making the order complained of. The claimants of liens upon the property were required to submit their claims to the court in the supplemental proceeding. If they should be confessed by the receiver, after examination, to be valid, they were prevented by the order from enforcing them by action or process, but if they should be questioned by the receiver, the claimants were then authorized to bring suit against the receiver to establish them. But they were expressly forbidden from attempting to enforce their liens independent of the proceeding wherein the receiver had been appointed. And, moreover, to raise a fund with which to pay the expenses of the receiver, he was ordered to sell certain personal property irrespective of the claims thereto or liens thereon by third persons. In this way those having alleged valid and subsisting liens upon such personal property, which might require the whole thereof to satisfy the liens, were required, in effect, to contribute their security or property toward paying the expenses of the judgment creditor, Stowers, in subjecting some possible equity of the judgment debtor in some or all of its property to his judgment.

Whatever right the said judgment creditor had to subject his debtor's property to the satisfaction of his judgment, whether by sale on execution, or otherwise, he very clearly had no right to so subject the property of others, or to divest others of their valid and subsisting liens. The liens, as alleged, were all acquired before Stowers recovered his judgment, and it is a general rule that a receiver's possession is subject to all valid and existing liens upon the property at the time of his appointment, and does not divest a lien previously acquired in good faith. (High on Receivers, Sec. 138; 3 Freeman on Ex., Sec. 419, p. 2244; id., Sec. 434, pp. 2335-6; J. W. Dann Mfg. Co. v. Parkhurst, 125 Ind., 317; Snow v. Winslow, 54 Ia., 200; Mulcahey v. Strauss, 151 Ill., 70.) While in some actions it might be entirely proper to dispose of property covered by liens and turn the proceeds into a common fund for appropriate distribution, it was positively improper in this proceeding to sell the property of the other claimants for the purpose stated, without regard to their rights.

The application of the receiver for an order to sell certain cattle was made on the ground that funds were needed to pay the expenses of conserving the partnership property and to pay the expenses of the receiver, and the order permitted the sale for that express purpose. The bank claimed to hold a chattel mortgage upon the cattle which the receiver desired to sell, and which the order permitted him to sell. It was clearly intended by the order, and such is its effect, that whether any other person had or had not a prior valid lien on the cattle, they might nevertheless be sold, and the proceeds devoted, not to paying off the lien thereon, but to defraying the expense of caring for other property of the judgment debtor, and paying the general expenses of the receiver. Its effect, therefore, is clearly to appropriate the property not alone of the judgment debtor, but of third persons as well, to pay the general expenses of this receivership. What is to become of the lien of the bank and possibly of other persons upon

the cattle so ordered to be sold? Are such parties to be
required to come in and put themselves upon the same
footing. as creditors without lien, and take their share in
the final proceeds of the entire property? As general
creditors, they would doubtless have that right if this was
indeed an action to wind up the partnership. We must
confess that it is impossible for us to understand how it
is either proper, just or equitable to thus dispose of in-
cumbered property without any regard to the rights of
the lienor. As shown in the original opinion, such a re-
sult may be accomplished in appropriate actions in the
case of a general receivership of a certain class of cor-
porations, and the reason therefor is there explained.

Possibly the court had power to order the sale of the
interest of the judgment debtors in any property for the
purposes set forth; but the order for the sale was not so
limited. To the extent that the order permitted or re-
quired the absolute disposal of incumbered chattels, and the
appropriation of the proceeds for the purposes prescribed
in the application and order, as above mentioned, it was
unauthorized and cannot be sustained. (1 Freeman on
Ex. (3d Ed.), Sec. 117.) In the section cited from Mr.
Freeman's work on executions, the author discusses at
some length the right of an officer to levy upon and sell
mortgaged chattels; and he says near the close of the
section: "By whatever mode or to whatever extent an
officer, when levying an execution, or in any supplementary
proceedings thereunder, denies or violates the right of the
mortgagee, the latter may seek and obtain redress by any
appropriate action, whether the wrong consists in levying
upon property when not subject thereto, or in retaining it
after the mortgagee becomes entitled to its possession be-
cause of the default of the mortgagor, or in utterly deny-
ing the right of the mortgagee."

Owing to the fact that much, if not all, the property of
the judgment debtors seemed to be largely incumbered by
various mortgages, both chattel and real, held by different

parties, embarrassment confronted the judgment creditor in obtaining satisfaction of his judgment through an ordinary levy and sale under execution; and the object of his supplementary proceeding was no doubt the conversion into money of the equitable interests of the debtors in the property in their hands, so as to secure for application on the judgment, to the extent necessary to satisfy the same, whatever interest, after satisfying prior valid liens, might remain the property of the debtors. To that end the proceeding instituted up to and including the appointment of the receiver and his taking possession of property in the debtor's hands, was doubtless entirely competent and proper. But to accomplish the intended result, we are aware of no principle which would permit the receiver to sell property incumbered by valid prior liens, so as to divest such liens, for the purpose of paying the expenses incident to his possession. Nor does such a proceeding appear to be either just or equitable.

We come now to the application of the plaintiffs in error for permission to enforce their liens. We are not prepared to agree that the court should have entered an order as requested permitting the lienors to take possession of the mortgaged personal property in the possession of the receiver, in the absence of an admission on the part of the receiver that the alleged mortgagee was under his mortgage then entitled to possession; since such an order might imply a determination of the right to possession. But we do think that they should have been permitted to take necessary and lawful proceedings to protect and enforce their alleged liens, under which permission they might, we suppose, have instituted replevin actions to recover possession, if that was deemed essential to their protection. Although we have no doubt that the receiver was authorized to take possession, under his appointment, he held such possession subject to the right of other prior lienors and claimants; and as the receiver had not taken any proper proceedings to ascertain the extent of the in-

cumbrances, but seems to have been holding the property adversely to the liens, we think the lienors should have been permitted to protect themselves by suit against the receiver.

Apparently the only reason for denying the petition of the plaintiffs in error for permission to enforce their securities was the theory that the court had jurisdiction in the supplementary proceeding to adjudicate the entire matter. We endeavored to show in the former opinion that such theory is erroneous. The receiver having been appointed and having taken possession of the property, it was proper for those claiming an interest therein or lien thereon desiring to establish or enforce the same to request the permission of the court. We are still unable to perceive any reasonable objection to the granting of such permission. Had it been granted, much expense would have been saved, and in all reasonable probability the whole matter would be much nearer final settlement. We are of the opinion that leave would have been granted, had the court not inadvertently adopted the erroneous theory that all the disputes as to the liens could be adjusted in the supplementary proceeding.

It is stated generally that the statutory proceedings in aid of execution are intended to accomplish the same purpose as a creditor's bill, and that the receiver in supplementary proceedings has usually the same powers as a receiver appointed in an action brought by a creditor's bill under the chancery practice as it formerly existed, and yet there is a radical difference in practical operation between the two proceedings. The supplementary proceeding is summary, and where the debtor's property is alleged to have been fraudulently conveyed, or it is subject to the claims or liens of third persons, there is a lack of necessary parties to permit of a proper adjustment of the interests of all the parties and the rendition of a decree that will be effectual from a jurisdictional standpoint. (Smith on Eq. Rem. of Creditors, Sec. 201; Lewis v.

Chamberlain, 41 Pac., 413.) This radical distinction is well illustrated by the authorities.

In the case of Wright v. Nostrand, 94 N. Y., 31, a receiver, who had been appointed under proceedings supplementary to execution, brought suit to set aside certain alleged fraudulent conveyances. The court said: "In the consideration of this case it should be borne in mind that the plaintiff is not here asserting any title to, or interest in, either the real or personal property of the judgment debtor by virtue of his appointment as a receiver, but is simply seeking to remove a cloud upon the debtor's title to the property in question, so as to subject it to sale on execution. Such an action he is authorized to bring and maintain. (Porter v. Williams, 9 N. Y., 142.) Actions for a similar purpose could as well have been brought and maintained by the plaintiffs in the several judgments in their individual names, as through the intervention of a receiver; and the effect of judgments obtained by them in such actions would have been the same as that attempted to be reached by a judgment in this action. It was competent for the receiver to have instituted either one of two actions in this case. He could have brought his action to set aside and annul the alleged fraudulent conveyances, and demanded as his relief that the property so fraudulently conveyed should be reconveyed to him by the alleged fraudulent grantees; or he could bring the action which he has as the simple representative of the judgment creditors. In the former case he would have been obliged, in order to maintain his action to show such proceedings relating to his appointment as a receiver, as would have vested in him, the title of the judgment debtor's real estate. The receiver is here seeking to enforce the collection of a debt due and owing to the creditors whom he represents, and upon recovering judgment herein he becomes entitled to sell upon execution such property of the debtor as is thus subject to the liens of the judgment which he represents."

Faber v. Matz, 86 Wis., 370, was an action in the nature of a creditor's suit to set aside as fraudulent certain conveyances; and the point was made that the court was without jurisdiction while supplemental proceedings in aid of execution were pending in that court. The court said: "The proceeding supplementary to execution commenced on the judgment, if still pending and properly pleaded, would not be a bar to this action. The object of the action is to reach property fraudulently assigned and conveyed to a third party, *and his rights could not be adjudged in respect to it save in a plenary action brought by a receiver in the supplementary proceeding.* The plaintiff had his election either to obtain the appointment of a receiver in whose name the action might be brought, or to proceed in his own name."

In Wisconsin the statute provides expressly that if it appear that any person alleged to have property of the judgment debtor or to be indebted to him claims an interest in the property adverse to him, or denies the debt, such interest or debt shall be recoverable in an action against such person by the receiver. But that is a mere statutory declaration of the general principle, as we understand it, and which was discussed by this court in the case of Schloredt v. Boyden, 9 Wyo., 392. And that this is so is manifest from the expressions found in various opinions of the Supreme Court of Wisconsin. In Holton v. Burton, 78 Wis., 321, the court said: "In the case at bar the only property in which the judgment creditor claimed that his debtor had an interest was shown to have been claimed by other persons; and could only be made applicable to the payment of his judgment after, in an action by the receiver, it had been adjudged that such property should be subjected to the payment of his judgment. In such cases it would seem not only unnecessary that the Court Commissioner should adjudge that such property so claimed by a third party was subject to the payment of the plaintiff's judgment, but it would be improper to do

so, as the judgment could not bind such third party, and might prejudice his defense in an action by the receiver." In Blabon v. Gilchrist, 67 Wis., 38, the court said: "The provisions of Section 3035 which authorizes the court or Judge to order any property of the judgment debtor in the hands of himself or any other person to be applied towards the satisfaction of the judgment, does not conflict with such intent, as it is clear from reading the whole section that such power can only be exercised in these proceedings *when there is no dispute* about the ownership of the property or as to the amount of the debt due to the judgment debtor by such third person. The proceeding, so far as it is an adversary proceeding, is solely against the judgment debtor, and no issue can be tried by the commissioner between a third person and the plaintiffs in the judgment as to the fact whether such third person has property in his hands belonging to the defendant. * * * If there was in fact any money in his hands belonging to his wife, the proper proceeding would have been to have asked the commissioner to appoint a receiver in the case, and to have directed such receiver to commence an action against the husband to recover the money in his hands for the benefit of the plaintiffs, or the plaintiffs might have garnished the husband, or made him a defendant in a creditor's bill." (See also Bank v. Upmann, 12 Wis., 555.)

The question has received consideration by the court of Iowa. In a case in that state a proceeding had been commenced supplementary to execution. The court ordered that a third party pay into court a certain sum found to belong to the judgment debtor and ordered that it be applied in satisfaction of the plaintiff's judgment. The court said: "It is evident from the discussion that there is a misapprehension as to the purpose of this kind of proceeding, and the effect of such orders, especially as to third persons. We think it advisable to make this further announcement in the case, to prevent such misapprehension.

The purpose of such a proceeding is to discover the property of the judgment debtor. The statute authorizing it does not provide any means additional to the usual provisions of the law for applying property when discovered other than the order to turn it over. When it is discovered, the judgment creditor's remedy is ample by the ordinary processes. Mrs. Fuller not being a party, is not concluded by the order on her to pay the money. Such an order is for the protection of the third person in turning over property or paying over money, and not to compel such turning over or payment. If Mrs. Fuller elected to pay the money as ordered, she would be fully protected in doing so by the order, but if she paid it without such an order or the consent of her creditor, she would not. * * * The third person not being a party to the proceeding, and not bound by the order to deliver or pay, does not disobey it by failing to do so." (Estey & Camp v. Fuller Implement Co., 82 Ia., 678.)

In Osborne v. Reardon, 79 Ia., 175, a judgment creditor, by proceedings in aid of execution, caused the judgment debtor and his wife to be required to appear and answer touching certain personal property which it was alleged the debtor had transferred to his wife fraudulently. The matter was referred to a referee, the parties were examined, as well as a large number of witnesses, and the referee reported that the judgment debtor was the owner of the property. Exceptions to the report were overruled, a receiver of the property was appointed, and the debtor was ordered to turn over the property to the receiver to be sold in satisfaction of the judgment. The debtor appealed. The Supreme Court held that so far as the rights of the judgment debtor were concerned there was no error, but the court said: "We do not discover any ground upon which this cause can be reversed; and, at the same time, we must say that the whole proceeding appears to us to be of very little consequence as an aid to plaintiff in the collection of his judgment. It is true he has an adjudication against the

defendant which estops him from claiming that the property ought not to be applied to the payment of the judgment. But he has no adjudication against the wife as a claimant of the property. He could just as well have ordered the Sheriff to levy upon the property before this order as afterwards. He could have indemnified the officer, if necessary, and compelled the wife to assert her rights by replevin or otherwise. *She has had no day in court,* and her rights are in no manner affected by the order. We have thought it our duty to say this much, because counsel for appellee appeared to be of opinion that the order appropriates the property." (See also Reardon v. Henry, 82 Ia., 134.)

In Stephens v. Meriden Britannia Co., 160 N. Y., 178, it appears that a publishing company had given to the defendant a bill of sale of certain personal property as security for an indebtedness, which instrument was in legal effect a chattel mortgage. Subsequently the mortgagee took possession of the property and sold it for its fair value. Another creditor having recovered judgment against the mortgagor obtained the appointment of a receiver of the property of the judgment debtor in a proceeding supplementary to execution, and the receiver commenced an action against the said mortgagee and the persons to whom the mortgaged property had been sold, to recover damages for its conversion. Among other things, the court said: "When the receiver was appointed the property of the judgment debtor became vested in him. He was then in a position to bring any action relating to that property which the judgment debtor or the judgment creditor could have brought and none other. The judgment debtor, for instance, could have brought an action against any one who had taken its property without its consent, while the judgment creditor could have brought an action in equity for taking the property of the judgment debtor even with its consent, provided such taking was fraudulent as to creditors. The receiver, having the title of the judgment debtor, can maintain any action sup-

ported by that title, which the judgment debtor could have brought. Representing the judgment creditor, he can also maintain any action in equity to set aside a fraudulent transfer, which the judgment creditor could have brought. As he represents no one except the judgment debtor and the judgment creditor, he can bring no action except such as the one or the other could have brought. * * * A receiver in supplementary proceedings represents simply the creditor who brought about his appointment and such as caused the receivership to be extended to their claims, each of whom is entitled to payment in full in the order of diligence in instituting proceedings."

In California under a proceeding supplementary to execution the wife of the judgment debtor was examined touching certain real estate claimed by the judgment creditor to be the property of the judgment debtor. On the same day that the affidavit was filed instituting supplementary proceedings, the wife conveyed the property to another. Upon hearing, it was found and adjudged that the real estate was the property of the judgment debtor and that neither his wife nor her grantee had any interest therein, and ordered that execution be issued and the property be subjected to the satisfaction of the judgment; and further ordered that a receiver be appointed to take possession. The Supreme Court said that the District Judge exceeded his jurisdiction and the jurisdiction of his court; that his only power was to make an order authorizing the judgment creditor to institute an action in the proper court against the parties claiming the property for its recovery and the subjection of the same to the satisfaction of the debt, and forbidding a transfer of the property until such action could be commenced and prosecuted to judgment. (McDowell v. Bell, 25 Pac., 128.) And in the case of Lewis v. Chamberlain, 41 Pac., 413, it was held in the same state that no order could be legally made in supplementary proceedings requiring third persons claiming the property to surrender it except upon their admission that

it was the property of the judgment debtor. And the court said: "To make such order in relation to property which they claimed to own in their own rights, if it could have any effect or operation, would be to deprive them of their property upon a summary proceeding, and without due process of law. If the plaintiff claims or believes their title under the conveyances mentioned in his affidavit to be invalid, an issue as to such ownership and title should be properly made and tried in an appropriate action, in which the verdict of a jury or the findings of a court may be regularly had determining this question, and which judgment could be regularly entered by which the parties would be conclusively bound." It would seem that in California instead of providing for the appointment of a receiver in supplementary proceedings the statute empowers the court to authorize the judgment creditor to bring suit against the third persons claiming the property.

An interesting case in Idaho seems to be quite in point. A judgment was obtained against the Coeur D'Alene Railway and Navigation Company upon a claim for construction work upon the railroad of the debtor. An execution was issued and returned "No property found." Thereafter the judgment creditor filed in the District Court where the judgment was obtained a petition setting forth that the Northern Pacific Railroad Company and the Northern Pacific Railway Company have or claim to have some interest in and to the railroad upon which the construction work had been done. The petition prayed that any and all claims or pretended claims of said companies be adjudged subsequent and inferior to the judgment of the petitioner; that a receiver be appointed to take possession and control of all the property and to proceed with due diligence to sell the same and apply the proceeds of the sale towards payment of petitioner's judgment; and, for that purpose, that the receiver be directed to manage, operate and control the steamboats, railroads and other property that had been described in the petition, etc. The railroad companies named filed an

answer denying many of the allegations of the petition and alleging facts showing that the Northern Pacific Railway Company asserted a claim to the property adversely to the judgment debtor. It appears that the petition and proceedings thereunder were had under statutory provisions providing for supplementary proceedings in aid of execution, and on hearing before the District Judge sitting at chambers, it was ordered that, notwithstanding said adverse claim, the property was subject to the debt of the judgment creditor, and a receiver was appointed to take charge of the property and to sell the same, or so much thereof as necessary, to satisfy the judgment. In that state it seems that a receiver may be appointed in supplementary proceedings, but the proceedings necessary to be had in such cases is not prescribed. There is a statute in that state also providing that in such proceedings the judgment creditor may be authorized to institute an action for the recovery of an interest in property claimed by a third party. On appeal from the order made by the District Judge, the court held that the same was void in so far as it affected the adverse claim and sought to subject it to the judgment of the petitioner, and that the appointment of a receiver was erroneous and unnecessary for the reason that the provision authorizing an order that the judgment creditor bring an action against the claimant afforded the creditor adequate protection. On rehearing the subject was discussed more thoroughly, and it was held that, although the Judge might appoint a receiver, or, upon certain facts being shown, might authorize the judgment creditor to institute an action and might forbid the transfer or other disposition of the property involved, he could not, in the proceeding itself, determine the priority of liens of conflicting claims. The court said: "He cannot proceed, and determine the conflicting claims, as was done in this proceeding. A proper suit must be brought for that purpose." (Spaulding v. Coeur D'Alene Ry. & Nav. Co., 59 Pac., 426; see also Lindenthal v. Burke, 21 Pac., 419.)

In the case of Brein v. Light, decided in the City Court

of New York in 1901, reported in 72 N. Y. Supp., 655, it was held that where a receiver claims property as belonging to the judgment debtor in supplementary proceedings, but in possession of a person not a party thereto, he can recover it only in an action therefor. After referring to the section of the statute controlling the matter, the court said: "The obvious purpose of the series of proceedings is to give the creditor an immediate and summary remedy against the debtor's property, but not to permit the rights of third persons to be brought in litigation except in a regular way by suit. If Eisenbud made no claim to the property in question, then an order for the delivery of the property by the defendant to the plaintiff would have been a matter of course; but, if Eisenbud claimed the property, the only way the matter could be settled would have been by the receiver's bringing action against him." (See also Monroe v. Reid, 46 Neb., 316; Ludos v. Hood, 29 Kan., 49; Armstrong v. McLean, 153 N. Y., 490; Ward v. Petrie, 157 N. Y., 301.)

From this review of the authorities, it must be evident that it is neither customary nor proper for the Judge or the court under the appointment of a receiver in supplementary proceedings to enter upon a hearing and determination therein of the rights of third parties who claim title to the property adversely to the judgment debtor, or claim an interest in or lien upon it, if disputed, for the obvious reason that such third persons are not in any true sense parties to the proceeding, and such hearing and determination is beyond the scope of the supplementary proceeding. Although the cases referred to have generally involved property to which an adverse title was claimed, the same principle must apply where the third party whose right is disputed is mortgagee or claims a judgment or other lien upon the property. Our statute does not expressly provide that the judgment creditor or the receiver may bring a suit or institute an appropriate action against the proper parties to determine adverse claims; but that authority necessarily

follows. Ordinarily a proceeding of this character is intended to reach property that cannot be taken upon execution, as was said by the Supreme Court of Wisconsin: "In respect of visible, corporeal and tangible property liable to levy, if it has been concealed, fraudulently conveyed, or otherwise placed beyond actual seizure, then the execution must be returned in whole or in part, and proceedings instituted under the proceeding in aid of executions to compel a discovery. When the property is known, and is tangible and liable to a levy on execution, there is no necessity of even a bill of discovery or supplementary proceedings, because the ordinary proceeding at law offers an ample remedy, unless it be real estate which has been fraudulently conveyed or encumbered so as to cast a cloud upon the title, and in such a case, under another jurisdiction of the court of equity, a bill will be entertained to remove such cloud, but only after the execution has been returned." (Smith v. Weeks, 60 Wis., 94.)

The receiver appointed in a supplementary proceeding is generally and indeed uniformly held to be the representative of the creditor only in whose behalf he was appointed. (High on Rec., Secs. 454, 455, 456.) And Mr. High says that when the debtor is in possession of property belonging to or claimed by a third person under a title apparently valid, and which is held by the debtor as his agent, it is improper by order of court to direct the delivery of such property to the receiver, since the courts will not thus summarily dispose of or determine the title to property claimed by third parties, but will leave the parties to the appropriate mode of recovering the property, in an action by the receiver against the person claiming the title. And that when the court is fully authorized to appoint a receiver of the debtor's estate, who might bring an action to test the title to property in the hands of a third person, claiming title from the debtor, it is improper to determine such disputed question of title upon a summary application, the remedy by the appointment of a receiver being the appropriate

course to pursue. (Sec. 457; see also Sec. 459.) In Smith on Receivers, that author says: "It is to be observed, however, that in this class of proceedings the receiver occupies the position of a trustee for the creditor in whose behalf he is appointed, and not that of agent or representative of the debtor. He succeeds to the rights of such creditor, and by reason of his trust relationship is entitled to enforce those rights to the extent necessary to satisfy the creditor's claims, the measure of his power being fixed by that of the creditor he represents." And again: "The receiver may institute actions to set aside fraudulent transfers of the debtor, in behalf of the creditors, and apply the proceeds derived therefrom." (Sec. 155.) And it has been held that a receiver in supplementary proceedings takes only an equitable right of redemption in chattels mortgaged by the judgment debtor and reduced to possession by the mortgagee before proceedings begun, and cannot maintain replevin against the mortgagee. (Campbell v. Fish, 8 Daly, 164.) And Mr. Smith, in his work on Receivership, says that, "As a general rule in this class of receiverships it may be stated that he (the receiver) takes the property and effects of the judgment debtor as he finds it subject to all rights therein and incumbrances thereon in favor of third parties, and his rights and powers are measured and determined by the rights and powers of the judgment debtor had no receiver been appointed, subject, however, to the exception that a receiver may avoid the frauds of the debtor which the latter could not do, but in doing so the receiver is the representative of the creditor and not the debtor." (Sec. 154.) And in the same section it is said that the filing of a creditor's bill and the service of process creates an equitable lien upon the effects of a judgment debtor and is in effect an equitable levy. And that is no doubt the effect of the proceeding in the case at bar culminating in the appointment of the receiver. Thereby the judgment creditor, Stowers, acquired a lien upon the equitable assets of the debtor. (Smith on Eq. Rem. of Creditors, Sec. 255.) And he became vested

with power to proceed to enforce that lien, and to take all necessary steps provided by the law to that end. It is not incumbent on us to suggest the remedies open to him; but perhaps, if the facts authorized it, as representative of the judgment creditor, he could have brought an action in the nature of a creditor's bill wherein all those interested in the property could have been made parties.

We find, however, no authority in the statute or in the character or object of this proceeding requiring such third persons to submit their claims for adjudication in the supplementary proceeding. In any action brought by such lienors, the receiver could no doubt interpose any defense which would have been open to the judgment debtor, as well as certain defenses such as that of the fraud of the debtor, which the latter would not have been permitted to interpose.

In case the interest of the judgment debtors in the land can be ascertained as between them and the mortgagees without controversy, then, under Section 3954, it would be competent in this proceeding for the receiver to be ordered to sell such real estate, or the interest of the debtor therein. But it appeared by the receiver's objections that the right of the mortgagees of the land under their decree of foreclosure was questioned as against the judgment creditor, Stowers.

If the mortgages or other liens are claimed to be invalid or fraudulent, or for any reason to be void or inoperative as against the Stowers judgment, the receiver may institute all appropriate actions to set them aside. But that result is incapable of accomplishment in the supplementary proceeding for lack of jurisdiction. Whether the receiver could in an independent action prevent summary foreclosure of the mortgages, or the enforcement of the same, is not a question now before us. In the present situation of the case the receiver is merely in possession under his appointment; and he seeks, for no other reason than that, to prevent the mortgagees and other judgment creditors from proceeding

to enforce their liens upon property in his possession. That is not, in our opinion, a sufficient reason. (Mulcahey v. Strauss, 151 Ill., 70.) Upon a careful re-examination of the question, we think the conclusion announced in the former opinion in this respect to be the correct one, and that the petition for rehearing should not be granted.

But the plaintiffs in error take exception to some expressions toward the close of the former opinion concerning the allowance out of the incumbered property of expenses generally incurred by the receiver, and a rehearing is prayed as to that matter. Those remarks we now think were inadvertently embodied in the opinion as the question relating to the charges and expenses of the receiver, and the property against which the same would be chargeable, was not and is not now before the court. The proceedings in error complained of a certain order not in any way touching the allowance of the receiver's expenses, except as it authorized the sale of certain cattle to raise a fund to pay expenses, and that order we have held to be error. A rehearing on the question suggested would, therefore, be unnecessary and indeed improper. A decision thereon could only be advisory upon a subject yet to come before the trial court, and the outcome of the case may even free the question from all dispute. It is proper to say, however, in view of our previous statement, that we shall not feel bound thereby should the matter properly come before us, and it may be that our impression then stated is erroneous. (See Hotchkiss v. Makeel, 87 Ill. App., 623; Howe v. Jones, 66 Ia., 156.)

It is urged as to the sales of certain personal property under stipulation, and the disposal of the proceeds thereof, and the settlement of the accounts of the receiver in such matters, and in the cutting and putting up of hay, that this court should hear the matters yet involved therein and make the necessary orders. But we think all those questions were properly remanded to the District Court, and that this court would be assuming original jurisdiction if it should

undertake to determine them in the first instance. Moreover, they will no doubt properly come up in connection with other proceedings of the receiver, and we regard it as more orderly that they be presented to the District Court. A rehearing will, therefore, be denied.

CORN, C. J., concurs.